## JONES LEATHER CO. v. WOODY.

No. 7391—Opinion Filed Jan. 30, 1917.

Rehearing Denied Jan. 8, 1918. Dissenting

Opinion Jan. 15, 1918.

(169 Pac. 878.)

**1. Damages—Exemplary Damages—Nature —Allowance.**

Exemplary damages are imposed on the theory of punishment to the offender for the general benefit of society, and as a restraint to the transgressor, and are allowed only in cases where malice, fraud, oppression, or gross negligence enter into the cause of action. Rhyne et al. v. Turley, 37 Okla. 159, 131 Pac. 695.

**2. Malicious Prosecution — Wrongful Attachment — Advice of Counsel — Disclosure.**

In a civil action for damages for wrongful attachment, where defendant relies upon the advice of counsel as a defense, the disclosure to counsel required of him before acting upon such advice is not a disclosure of all the facts discoverable, but all the facts within his knowledge. If he knows facts enough, either personally or by credible information, which, when fairly and fully stated to reputable counsel for the purpose of obtaining legal guidance, result in advice which is honestly followed in commencing an attachment proceeding, that is sufficient.

**3. Malicious Prosecution—Want of Probable Cause—Burden of Proof—Exemplary Damages—Directed Verdict.**

In an action for malicious prosecution, the burden of proof is upon the plaintiff to prove want of probable cause, and where the evidence shows that the prosecutor laid all the facts before competent counsel, and acted in good faith upon the advice given, he is exonerated from all liability for exemplary damages, and where the evidence fails to show malice in instituting the proceedings, and the absence of probable cause, it becomes the duty of the court, and it should upon request, direct a verdict for defendant.

**4. Same—Wrongful Attachment — Dissolution—Malice.**

In such an action, proof of the dissolution of the attachment does not show malice, or the want of probable cause for commencing the attachment proceedings.

(Syllabus by Galbraith, C.)

Thacker, J., dissenting.

Error from District Court, Oklahoma County; W. R. Taylor, Judge.

Action by J. L. Woody against the Jones Leather Company. Judgment for the plaintiff, and defendant brings error. Reversed.

See, also, 37 Okla. 371, 133 Pac. 201.

Chas. H. Garnett, for plaintiff in error.

S. A. Horton, for defendant in error.

Opinion by GALBRAITH, C. This appeal is from a judgment rendered upon the verdict of a jury in an action for exemplary damages claimed to have been sustained on account of the wrongful levy of an attachment order in an action for debt.

The Jones Leather Company, the plaintiff in error, was a wholesale dealer located at Kansas City, Mo.; J. L. Woody, the defendant in error, was a retail dealer located at Oklahoma City. In April, 1911, Woody was indebted to the Jones Leather Company upon an open account for merchandise then past due. The president of the Jones Leather Company, who was also one of its traveling salesmen, on a regular trip to Oklahoma City, in April, 1911, called upon Woody and sold him a small bill of goods,

and then presented the past-due account and demanded payment. Woody could not pay all of the account, but arranged a settlement with Jones by which he made a small payment in cash and gave checks on his bank with advance dating for the balance. When this settlement was reported to the house at Kansas City it was repudiated, and another Mr. Jones, vice president of the company, made a special trip to Oklahoma City for the purpose of collecting the amount due on the Woody account. After arriving here he consulted his lawyer, and after laying all the facts before him he advised that grounds for an attachment existed. Suit was filed on the account, and an affidavit and bond for attachment were filed, and the attachment order issued, and levied upon Woody's stock of goods. A motion to dissolve the attachment was presented, and after evidence taken thereon was sustained, and the goods ordered returned to Woody. From this order an appeal was prosecuted to the Supreme Court, and the order was affirmed. Jones Leather Co. v. Woody, 37 Okla. 371, 133 Pac. 201.

When this action was commenced the petition contained two counts, one charging a cause of action for actual damages, and the other alleging a cause of action for exemplary damages. The defendant interposed a demurrer to the petition on the ground of a misjoinder of causes of action. This demurrer was sustained, and by order of court the action was continued on the first cause of action set out in the petition, and the petition was refiled as another suit on the second count, that being the count claiming exemplary damages. When called for trial the two counts or causes of action were consolidated and tried as one cause. Separate judgments were rendered in each on the separate verdicts returned for the plaintiff. An appeal was prosecuted to this court from such judgments, and after proceedings in error were perfected the judgment rendered in the cause for actual damages was settled, and that cause dismissed. Thus the appeal from the judgment rendered in the action for exemplary damages remained for consideration.

Objection is here made that the judgment in this cause cannot be sustained because it is for exemplary damages only, and that "where no actual damage has been suffered no exemplary damages can be recovered." The case-made shows that actual damages were sustained in this transaction, and that the same jury that returned a verdict in this case also returned a verdict in the action for actual damages, and that these were rendered at the same trial and on the same day, and that the judgment for actual damages has been paid and that cause has been dismissed. In any event, whatever error, if any, may have been committed by the trial court in requiring a severance of the two causes of action was induced by the plaintiff in error, and it cannot now take advantage of such. This contention is therefore wholly without merit.

It is again argued in the brief that the court in its instructions to the jury failed to state the law fully and correctly. The record, however, fails to show that any exceptions were taken to the instructions when given, and therefore they are not brought up for review, except in one instance.

At the close of the testimony the Jones Company requested the court to instruct the jury to return a verdict for it. This was denied and exception saved. This ruling is assigned as error, and the same question is presented by the assignment to the order overruling the demurrer to plaintiff's evidence. The questions raised by these assignments are that the evidence fails to show malice in making the attachment affidavit and the absence of probable cause for instituting the attachment proceeding, and that the burden was upon the plaintiff to show the presence of these elements in order to maintain this action. The defendant in error apparently relied upon the proof that the attachment upon the hearing was adjudged to have been wrongfully issued, and was dissolved, and that this judgment had been affirmed on appeal to the Supreme Court. This evidence was not sufficient to show malice in making the attachment affidavit, or the want of probable cause for instituting the attachment proceedings. Lindsey v. Couch, 22 Okla. 4, 98 Pac. 973, 18 Ann. Cas. 60; El Reno Gas & Electric Co. v. Spurgeon, 30 Okla. 88, 118 Pac. 397; Central Light & Fuel Co. et al. v. Tyron, 42 Okla. 86, 140 Pac. 1151; Sims v. Jay, 53 Okla. 183, 155 Pac. 615.

Exemplary damages, such as were sought in this action, are imposed by the law on the theory of punishment of the offender for the general benefit of society, and as a restraint to the transgressor, and are allowed only in cases where malice, fraud, oppression, or gross negligence enter into the cause of action. Rhyne v. Turley, 37 Okla. 150, 131 Pac. 695. The court, in the opinion in the case last cited, after quoting section 2851, Rev. Laws 1910, authorizing exemplary damages where the defendant has been guilty of

"oppression, fraud, or malice, actual or presumed," say:

"This statute is substantially the common law. They have no relation to the question of compensation for loss sustained, but are permitted on the theory of punishment to the offender for the benefit of the community, as a restraint to the transgressor. Such damages are allowed only in cases where malice, fraud, oppression, or gross negligence enter into the cause of action." Citing a long list of cases.

In Lindsey v. Couch, 22 Okla. 4, 98 Pac. 973, 18 Ann. Cas. 60, the court said:

"In order to maintain this action it was incumbent on the plaintiff to prove want of probable cause; that is, that the prosecution of which he complains was not based upon such facts and circumstances, known to defendant at the time sufficient in themselves to lead him, as a reasonable and cautious man, to believe the plaintiff probably guilty of the crime charged, but was actuated by malice or some improper or sinister motive. Stewart v. Sonneborn, 98 U. S. 187, 25 L. Ed. 116."

The evidence showed that Mr. Jones, who made the attachment affidavit, had no personal dealings or acquaintanceship with Mr. Woody, and that he did not know him by sight. The evidence also shows that Jones knew at the time of making the affidavit that the account against Woody was past due; that Woody some time before had traded $1,600 worth of his stock for unimproved real estate, had allowed his checks, given his creditors as payments on accounts, to go to protest, and that the reports of the commercial agency on Woody showed him to be slow and uncertain pay; that he was making arrangements to change his place of business; and that Jones believed that he was offering to sell not only his goods, but his work tools; that when Jones came to Oklahoma City for the purpose of collecting the account of his company against Woody, he went to see his counsel and advised with him about the proper method to pursue, and after laying all the facts before counsel he was advised that there was sufficient ground to justify an attachment; that in following this advice in good faith he made the attachment affidavit and caused the writ of attachment to issue and the goods to be seized. There is not a particle of evidence in the record that shows that he was actuated by malice in the proceeding, or by any other motive than a desire to realize upon the account, and his relations with Cunningham in regard to getting the statement in writing from Woody to the effect that he would sell his business does not show anything more than active diligence on the part of Jones to advise himself as to the intention and purpose of Woody, and the real cause of his failure to pay his account when due. So the evidence failed to show malice, and also failed to show want of probable cause for instituting the attachment proceedings, and therefore it appears that the plaintiff failed to sustain the burden imposed upon him by law, and that the demurrer to the evidence should have been sustained, and the peremptory instruction should have been given.

Another reason why the peremptory instruction should have been given is this: The Jones Company defended this action upon the ground that it acted in good faith in bringing the attachment proceedings, and upon the advice of counsel, after having laid all the facts before him. The testimony is not controverted that when Jones came to Oklahoma City for the purpose of collecting the account against Woody, he consulted counsel about the method to proceed in order to accomplish this result. It is contended on behalf of the defendant in error that the Jones Company is not relieved from liability, because it did not lay all the facts before its counsel; but it is not clear what facts were withheld from counsel, if any, and the record shows that Jones diligently endeavored, by inquiry from the commercial agencies, and otherwise, to ascertain the true state of affairs. It was not necessary that he should consult Woody to find out if he intended to defraud the Jones Company. In Roby v. Smith et al., 40 Okla. 280, 138 Pac. 141, the rule is announced in the syllabus as follows:

"In a civil action for damages for malicious prosecution, where the defendant relies upon advice of counsel as a defense, the disclosure to counsel required of him before acting upon such advice is not a disclosure of all the facts discoverable, but all the facts within his knowledge. If he knows facts enough, either personally or by credible information, which, when fairly and fully stated to reputable counsel for the purpose of obtaining legal guidance, result in advice which is honestly followed in commencing the criminal proceedings, that is sufficient."

Again, in Allison v. Bryan, 50 Okla. 677, 151 Pac. 610, the rule is announced in the third paragraph of the syllabus as follows:

"In an action for malicious prosecution, the burden of proof is upon the plaintiff to prove want of probable cause, and where the uncontroverted evidence shows that the prosecutor laid all the material facts * * * before a competent attorney, and acted in

good faith, upon the advice given, he is exonerated from all liability."

Under this rule of law there was no question for the jury in this case. The evidence in this case shows that Jones acted upon the advice of his counsel in instituting the attachment proceedings, after laying all the facts before him, and in good faith followed his advice in instituting the attachment. There is no proof of malice, and the evidence clearly shows, as we read it, that there was probable cause for instituting the attachment proceeding.

It is also insisted that Jones' statements to counsel were untrue, in that he told his attorney that Woody had sold a portion of his stock in bulk, without complying with the bulk sales law; whereas such sale by Woody took place prior to the time the last bill of goods was sold, and was therefore immaterial as to Jones Company, which facts Jones did not tell his counsel. Although it appears that such bulk sale did take place prior to the last sale to Woody, it further appears that long prior thereto Woody owed a running account to the Jones Company, which was in part unpaid, and it does not appear that the sale in bulk did not take place after the commencement of this account

It therefore follows that there is no legal or moral justification for penalizing the Jones Company for causing the attachment order to issue, and that the judgment should be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

The former opinion filed herein is withdrawn.

By the Court: It is so ordered.

THACKER, J. (dissenting). I am compelled to dissent from the opinion of Commissioner GALBRAITH, which has been adopted by this court as its opinion in this case, as I think it is inconsistent with the decisions in general of the court relating to the sufficiency of evidence, and contrary to the well-established rule that if there is any evidence reasonably tending to support the verdict the issue in the case will be regarded as one which should have been submitted to the jury, and the verdict of the latter and the judgment of the court therein will not be disturbed after motion for new trial has been overruled.

The plaintiff here was the proprietor of a business in Oklahoma City originally comprising, besides shoe repairing, wholesale

and retail dealing in leather and findings and retail dealing in shoes and gents' furnishings, but which on February 1, 1911, was reduced, by exchange of stock of shoes and furnishings with one R. L. James for vacant city lots, to shoe repairing and wholesale and retail dealing in leather and findings.

On November 17, 1910, the plaintiff here made a statement of assets and value thereof at $6,400 and of liabilities to the amount of $1,050 to the R. G. Dun & Co. Mercantile Agency, which, on November 21, 1910, made, in connection with a copy of such report, a memorandum that this plaintiff "is well mentioned in personal respects" and "said to be attentive to business and possessed of fair ability," and, further that "authorities conferred with report his statement a substantially correct one, although his valuations on the vacant real estate are thought to be a little high, and about $3,000 is believed would fairly represent the amount of the stock as a quick asset." On February 18, 1911, R. G. Dun & Co. Mercantile Agency furnished the defendant in the present case with a report on this plaintiff, including the above information.

About February 1, 1911, the defendant here sold the plaintiff here a bill of goods, consisting of shoe repairing supplies and of leather and findings, which were shipped on that date upon terms of 2 per cent. off if paid for within 10 days, and net cash if paid for after the 10th, but before the expiration of the 30th day. In April, 1911, the above-mentioned bill remained unpaid and Mr. Jones, the president of the defendant company, who was also its traveling salesman, called upon the plaintiff here, and, with knowledge of the R. L. James transaction above mentioned, after taking an order for another small bill of goods, demanded payment of the former bill, which two bills amounted in the aggregate to $352.28.

The following colloquy and agreement thereupon occurred, and was entered into between the plaintiff here and that representative of the defendant company, according to the testimony of the plaintiff here:

"Well, he came in my shop; came in and talked in a general way as he always did. I gave him a small order for some merchandise; then he presented his bill, which was partly unpaid and some time past due. I says, 'Mr. Jones, you struck me kinder hard up this morning; I had checked up to my limit last night on my bank account; I didn't know you were coming up here this morning or I would have been prepared for

you. I will tell you what I will do, I will pay you all I have got. He says, 'How much can you give me?' I says, 'I have got $15 I can give you this morning; if you are here this afternoon I will make it $50.' He went all to pieces and began to swear. Q. What did he say? A. He says, 'Oh, hell, you missed all that, we won't stand for anything like that.' I says, 'I will tell you, Mr. Jones, you realize the situation I am in, cramped down with high rents; I am going to get loose from here in a day or two and move out; I will pay easily, we are going to move out.' He said, 'Now you give me what money you can on this account, and give me checks for certain amounts.' I said, 'I will do that, provided you can date them in advance at different times so they will be protected at the bank.' We agreed on the time, and I gave him, as I remember, two checks, one dated a certain time and another dated at a certain time; at his request, gave him money and checks, and he gave me a receipt accordingly, and he says, 'That will be satisfactory,' and took them and went out. Q. Before the date the check was payable was the attachment run? A. Yes; certainly, several days before that."

During the latter part of May, 1911, another Mr. Jones, who was a brother of the former and the vice president of the defendant company and had charge of its collections outside of the store and attended to matters of attachments and legal proceedings in general for his firm, ignoring the above agreement, came to Oklahoma City and called upon J. W. Cunningham, who was engaged in the shoe repairing business, and representing himself to be a shoemaker from California desiring to purchase a shop and engage in that business in Oklahoma City, procured Cunningham to go to the plaintiff here and indicate to the latter that he knew a purchaser would pay the latter "something around $625" for the latter's shop, and to procure from the latter a written statement that he would sell for that amount, which was done. It appears that neither Cunningham nor the plaintiff here understood this proposition to purchase "the shop" to include the stock in trade, nor anything except the tools used in the repairing business and the place occupied by the plaintiff here as tenant in the conduct of his business, for which this price was a good and attractive one. About the same time he procured from R. G. Dun & Co. Mercantile Agency another report upon the plaintiff here, including a statement by the plaintiff, under date of May 23, 1911, valuing his assets at $1,967 and placing his liabilities at $700, which report, being of an entry in the records of this agency under date of May 25, 1911, stated that the plaintiff here was "fairly well spoken of personally; fair ability," and, further, that:

"It is the opinion that the stock, tools, etc., are valued fully 50 per cent. too high. February 1, 1911, sold his retail stock of shoes to R. L. James of Tipton, Okla. * * * As will be noted his liabilities are heavy. The eight lots in Phillips addition to the city are said in the name of R. L. James of Tipton, Okla., and the Morris town lots are held by R. M. Conway. November 17, 1910, submitted statement claiming assets of $6,400, and liabilities of $1,050, leaving a surplus of $5,230, claims that owing to much sickness he has lost considerable money during the past eight months. Transacts but a fair business and has heavy expense, paying a monthly rental of $150. Reported slow in meeting payments. There are said some accounts in hands of attorneys and no estimate of worth is offered."

The evidence does not show that the R. L. James lots did not stand upon the records in the name of the plaintiff here at the time of the attachment, nor that they were at the time of that transaction worth less than the stock given in exchange for the same, nor that there was anything in that transaction reflecting upon the integrity of purpose of this plaintiff, as I understand the record here.

With this information and with the further information that on November 12, 1910, one of the present plaintiff's checks to Ashinger & Sons for $40 was protested, and on March 1, 1911, another for $10 to Jerrickson & Son was protested, and perhaps that on May 12, 1910, another for $21.75 to J. W. and A. P. Howard was protested, the defendant company, without any attempt to collect from the plaintiff after the above-stated transaction in April, 1911, and without any character of warning, on May 26, 1911, commenced an action against the plaintiff for $337.28, the amount of its unpaid bills, with interest thereon at 6 per cent. per annum from March 15, 1911, and made affidavit through the last-mentioned Mr. Jones for attachment, stating grounds therefor as follows:

"Affiant further states that said defendant, J. L. Woody, is about to convert his property, or a part thereof, into money, for the purpose of placing it beyond the reach of his creditors. And affiant further states that said defendant has assigned, removed, and disposed of a part of his property, and is about to dispose of a part of his property with intent to hinder, delay, and defraud his creditors."

Before making this affidavit for attachment in behalf of the defendant here, this representative of the latter consulted an at-

torney of Oklahoma City (possibly, and as the jury may have found, as to the sinister expediency and advantage of forcibly collecting by means of attachment what was owing, without regard to whether there was any statutory ground for doing so), who testified in the instant case in this regard as follows:

"He stated that Mr. Woody had sold part of his stock and he talked he was preparing to dispose of the balance of it. * * * He explained that matter that his firm had been trying to collect an account, been unable to do so, and what they wanted was to get their money, and he explained; made a statement of the facts to me. * * * He told me that some party was negotiating with Mr. Woody at that time for the purchase of the balance of his stock of goods, and he was going to make some investigations and ascertain whether or not that was a fact, and upon the statement of fact that he gave me I told him what I thought he ought to do. * * * He told me that Woody had refused to pay the money, and I told him his remedy was by attachment. * * * I don't know whether I said it or whether" [another attorney in the office and the one who drew the attachment papers] "said that an attachment proceeding was always a dangerous proceeding; that we ought to be careful how we proceeded in this particular case. * * * We told him he had grounds for attachment, and he said, 'Go ahead.'"

This witness was thereupon asked:

"Didn't he say to you, in substance, at that time he had plenty of time, plenty of money to handle it, something like that?"

And the witness answered:

"I don't know as he said he had plenty of money, but after we gave him the advice he was willing to go ahead. * * * I don't recall whether he used that language or not. * * * He hasn't acted like he was" [afraid to attach].

This Mr. Jones, when questioned upon the trial case as to what was his intention and purpose in attaching, did not say it was to prevent any feared fraudulent or wrongful act by the plaintiff here, not because the latter had been guilty of any, but answered:

"Why the only purpose was to collect the money which was due us."

He also testified:

"Well, we are members of the National Findings Association, which is an organization composed of leading shippers in that line of business, and when a customer gets in bad shape we exchange back and forth information concerning trade—"

Thus the fact that the plaintiff here appeared to be getting into "bad shape," rather than the fact that any statutory ground for attachment existed, appears to have been uppermost in the mind of this representative of the defendant here in giving reasons for the attachment.

On June 1, 1911, the motion of the plaintiff here to dissolve that attachment, for the reason that the grounds alleged therefor in the affidavit of this Mr. Jones were false, was sustained by the trial court; and this court upheld the action of that court in the order dissolving the same in Jones Leather Co. v. Woody, 37 Okla. 671, 133 Pac. 201.

As I understand the record here, upon the trial of the instant case this Mr. Jones did not testify as to whether, when he made the affidavit for attachment, he believed that any statutory ground therein alleged was true, and the evidence for the defendant company, in the instant case, smacks of having been directed merely toward showing a lack of ability positively of the plaintiff here to meet his obligations promptly, and perhaps a lack of strong and firmly fixed sense of obligation to do so, instead of going further than this coward showing that the plaintiff here had converted, or was about to convert, his property, or a part thereof, into money, for the purpose of placing it beyond the reach of his creditors, or had assigned, removed, or disposed of a part of his property, or was about to dispose of a part of the same with intent to hinder, delay, or defraud his creditors.

The foregoing statement of facts is, of course, based upon the evidence, and the permissible inferences therefrom tending to support the verdict and judgment, and it ignores more or less evidence adduced by the defendant company to the contrary and the permissible inferences from the source.

The defendant company undoubtedly had abundant grounds for finding the plaintiff here an unsatisfactory and undesirable debtor, if not to fear that it might never be able to collect, and, in the state of the evidence before us, if the verdict and judgment in the trial court had been for the defendant instead of the plaintiff, I think it would not seem clearly justified; but a different inference may reasonably be drawn from the evidence, and it must be borne in mind that the law does not authorize an attachment because a debtor is unsatisfactory and exasperating, nor even when grave danger of loss by the creditor is apparent, nor unless a statutory ground therefor exists.

It is true that such grounds can generally be shown only by circumstantial evidence, including such circumstances as were shown in the instant case, and it is also true that it is often difficult to make such proof, even when such grounds do exist and the creditor is reasonably convinced of their existence; but, although the evidence here of malice in the attachment proceeding, in view of these considerations, is far from convincing to me, it appears to me that it was sufficient to take the case to the jury, and therefore sufficient to sustain the verdict and judgment, since an inference of malice seems possible and within the bounds of reason.

There is, within the bounds of reason, room for the inference that the defendant company had become dissatisfied and impatient and irritated, if not exasperated, because of the failure of the plaintiff here to meet his obligations promptly, and the depreciation in his assets, and that a sense of vindictive resentment, coupled with an evil desire for an undue advantage as a creditor, amounting to malice, was on efficient contributing cause of the attachment.

The mere fact that the grounds alleged in an affidavit for attachment are found not to have existed is not sufficient to support a verdict and judgment for exemplary damages dependent upon malice as a basis; but where all the facts and circumstances attending an attachment proceeding, based upon a false affidavit as to the grounds therefor, leave room in reason for question as to whether the creditor accepted the statute as a criterion by which to determine whether he had a right to attach, and in good faith undertook to ascertain whether grounds for attaching existed, and made his affidavit for attachment believing the grounds alleged to be true, and acted upon the belief that they were, or, instead of doing so, recklessly disregarded this criterion and the question of the truth of such allegations of grounds and the rights of the debtor, the question of malice is for the jury. An affidavit that is willfully or carelessly and recklessly false in respect to the statutory grounds for attachment, as is reasonably inferable in the instant case, is certainly sufficient evidence of malice to take a case to the jury.

As I understand the record here, the defendant company did not stand by its April, 1911, agreement with the plaintiff here, nor offer to return any benefit received under that agreement, nor so much as advise the plaintiff here that it was not satisfied with the same, nor afford the plaintiff here any opportunity after that agreement to pay as an alternative to an action accompanied by attachment proceedings against him; and, although it does not conclusively appear that it did withhold important information from its attorney, as it may be inferred that it did, it does not clearly appear that the statement to the attorney consulted was full and fair to the plaintiff here. It appears that it misinformed him to some extent by telling him that the plaintiff here had refused to pay, and that the latter had sold part of his stock (possibly referring to his exchange of stock for city lots, which is not shown to have been disadvantageous to creditors), and was preparing to dispose of the balance; and in order to find or create a color of grounds for attachment procured another to make the plaintiff here a spurious offer to purchase his shop at a good and attractive price, and before any default had been made in the payment of either check given by the plaintiff here in the agreement of April, 1911, or the time for the payment of the same had arrived, the defendant here commenced action and attached the plaintiff's stock in trade, leaving him nothing but exempt property.

Where a creditor, being in doubt as to his legal rights, seeks the advice of counsel and makes a full and fair statement of the pertinent facts to the latter, whom he reasonably regards as competent and otherwise trustworthy, for the purpose of ascertaining whether, under the law as applied to such facts, he has a legal right to attach, and in good faith relies and acts upon the advice of such counsel, there is no evidence of actionable malice, and he is not liable for exemplary damages, even though it is afterwards found and adjudged that the attachment was wrongful; but this is generally a question of fact, and is no defense when, in fact, he seeks advice to ascertain whether he may safely disregard the law and gain an undue advantage by attaching, without regard to statutory grounds, withholding or misstating important facts, and substituting his own conception of when he should have a right to attach for the statute specification of when he has such right, as his criterion; and under the facts and circumstances of this case, as perhaps in most cases of false affidavits for attachment, it was for the jury to determine whether the attaching creditor sought advice upon the question of his legal right, and relying and acting upon advice of counsel, and, acted upon the same in the belief that he was within his legal rights and thus

in good faith, or instead acted without such belief and wrongfully and maliciously.

In the state of the evidence, and in view of the rule as often announced by this court, it was, as I think, within the province of the jury to determine the question of malice, and of exemplary damages based upon such malice, as they did, and that the verdict and judgment should, therefore be affirmed.