**SPENCER v. ARNOLD.**

No. 21144.    Opinion Filed Oct. 20, 1931.

H. P. Hosey, for plaintiff in error.

G. H. Montgomery and Tom Finney, for defendant in error.

SWINDALL, J. The alleged acts of trespass were: The dispossession of the plaintiff on two occasions under the claimed authority of writs of assistance issued in an action involving her land, to which she was not a party; an assault and battery; and a wrongful arrest in an attempt to eject her from the premises.

It was undisputed that the land was allotted to Richard Arnold, the husband of the plaintiff, and that the land had been the homestead of Richard Arnold and the plaintiff up to the time of his death, about a year prior to the dispossession, and that it continued to be the homestead of the plaintiff thereafter. The defendant had sold an automobile to one Henry Arnold, who was not a relative of Richard, but was a boy whom the plaintiff had taken to raise, and who had been away for many years prior to 1926. He was about the place in 1926 and he had represented himself to the defendant to be the owner of the land. The defendant testified that when he took his mortgage he went to the land and that the plaintiff was not there. A few days before the first dispossession of the plaintiff, the defendant went to see her on the land and asked her if she did not know that the land had been sold, also telling her, as he said, that he had foreclosed a mortgage on it and had a sheriff's deed for it. She told him that she owned the land and had not sold it. Upon her refusal to yield possession the defendant said he would turn the matter over to the sheriff.

A few days later the defendant filed a praecipe in the foreclosure suit and a writ of assistance was issued, but the plaintiff had not been made a party to the action, and the writ only contained the usual command to dispossess the defendants (Henry Arnold and Stella Arnold) and those claiming by, through, or under them since the institution of the action. On February 8, 1927, the defendant went to the premises, accompanied by one Joe Bollin, a deputy sheriff, who had the writ of assistance in his possession and read it to the plaintiff in the presence of the defendant.

The deputy sheriff testified that at first the plaintiff objected to leaving, but finally did leave. Her effects were taken out of the house in which she lived, and a few days later were moved into another house on the premises. On February 14th the plaintiff returned to the premises. Later a second writ of assistance was issued, and on March 11th the defendant again came out, accompanied by the deputy sheriff, and the plaintiff was again dispossessed. This second writ was also issued without notice and contained the same usual limited commands, to dispossess the defendants and those claiming by, through, or under them since the institution of the action. On this second occasion the defendant and the deputy sheriff were accompanied by a man to whom the defendant had assumed to rent the premises. On this second occasion the plaintiff evidently strenuously refused to permit her goods to be removed, and she was struck by the deputy sheriff with the brush end of a broom. The deputy testified, and admitted the battery and admitted that he was mad. He attempted to justify by saying that the plaintiff had a butcher knife, not attacking him, but attempting to block his movements. The plaintiff denied having the knife, and neither the defendant nor another witness, who was employed by the defendant and was engaged in moving the goods into the other house again on this second dispossession, testified that she had the knife. The plaintiff testified that the defendant was present all the time on both occasions, but the deputy sheriff and the defendant testified that he was there very little of the time.

The deputy sheriff said that the plaintiff was arrested on the day of the second disposition, the object being to have her punished for contempt in going into possession after being dispossessed, for fear that she would re-enter after the second dispossession. The defendant testified that she was taken into Idabel that day, but did not admit knowing that she was arrested. To the contrary the plaintiff testified to what she had alleged in her petition, in effect, that she was arrested on another occasion, and that the defendant was present at the time. The petition alleged that the arrest was made

on March 10th in an effort to dispossess her. That was the day on which the praecipe for the last writ was filed, but a day before it was executed, and the arrest, if made before the 11th, was evidently made prior to the 10th. She testified that both the deputy sheriff and the defendant came out to her place, prior to March 11th, and that she was put under arrest, taken to Idabel to the courthouse, told to stay all night with one of her relatives and to be back the next day, that the judge wanted to see her then. She returned to the courthouse the next day and waited around all day until late in the afternoon, when she was told that she could go. She was never arraigned or even taken before the court or judge. She testified that she then went back home and that it was later that she was dispossessed the second time.

There was considerable evidence to the effect that in moving her goods the second time they were damaged, among the items alleged to have been seriously damaged being an organ and a cook stove. She also alleged that a number of jars of fruit were lost, and that a small barn in which she had considerable corn and hay was broken open and the corn and hay gone on her return after the second dispossession, the premises in the meantime being in the possession of the defendant, who had a man looking after them.

The plaintiff testified that she had the land rented for 1927, but that the tenant did not go on and cultivate it because it was involved in litigation, and the evidence showed that the plaintiff brought a suit for injunction and to quiet title in which judgment was not rendered until after the middle of June.

It was in evidence that after the plaintiff refused to surrender the premises the defendant went to see his attorney, but it is not in evidence just what he told him further than that the plaintiff was in possession and would not vacate. It was also in evidence by his own statements that when she refused to vacate the premises he threatened to take the matter up with the sheriff, and that it was only the praecipe for the second writ of assistance that was signed by the attorney, the first apparently having been signed by the defendant himself.

The prayer asked for $1,574.75 actual damages and $1,000 punitive damages. The jury returned a verdict for $250 actual damages and $250 punitive damages.

No instructions were requested by the defendant, and the instructions given by the court thoroughly covered the issues. No exceptions were taken to any of them.

(1) The defendant contends that the allowance of punitive damages was improper under section 5975, C. O. S. 1921, which reads as follows:

"Jury May Give Exemplary Damages, When. In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant"

—and also cites 17 Corpus Juris, 974, quoting as follows:

"In order that there may be a recovery of exemplary damages, there must be present in the circumstances some element of malice, fraud or gross negligence, otherwise the measure of damages is such an amount as will constitute a just and reasonable compensation for the loss sustained, and nothing more."

The defendant also cites Rhyne v. Turley, 37 Okla. 159, 131 P. 695; Jones Leather Co. v. Woody, 67 Okla. 184, 169 P. 878; and Western Union Telegraph Co. v. Cates, 65 Okla. 139, 164 P. 779; and quotes from Brown v. Allen, 67 Ark. 386, as follows:

"Exemplary damages cannot be recovered of a constable for the seizure and sale of the wife's household goods under an attachment against the husband, where it appears that the goods were believed to belong to the husband and that there was nothing wanton or malicious in the conduct of the constable, nor any unnecessary humiliation inflicted upon the wife, nor any force used."

In Rhyne v. Turley, supra, an officer followed a dray and on seeing a case delivered at a house entered and raised the lid and on ascertaining that the case contained whisky took possession of it, telling the wife of the owner that he believed it to be an illegal shipment and would have to take it before a justice of the peace for investigation. He had no warrant authorizing a search or seizure. Suit was brought for trover and conversion, the whisky being valued at $7, and a verdict was returned for $2,000. The court rightfully held that there was no malice, and it is to be readily conceded that a peaceable entry during the daytime, without dispossession, was not oppression, and that, however the owners may have felt, the deprivation of the case of whisky was not oppression cognizable by the law.

In Jones Leather Co. v. Woody, supra, the court laid down the doctrine as contended

by the defendant, but did it in connection with the following remarks concerning the evidence, the case being an action of malicious prosecution:

"The questions raised by these assignments are that the evidence fails to show malice in making the attachment affidavit and the absence of probable cause for instituting the attachment proceeding, and that the burden was upon the plaintiff to show the presence of these elements in order to maintain this action. The defendant in error apparently relied upon the proof that the attachment upon the hearing was adjudged to have been wrongfully issued, and was dissolved, and that this judgment had been affirmed on appeal to the Supreme Court. This evidence was not sufficient to show malice in making the attachment affidavit, or the want of probable cause for instituting the attachment proceedings."

The case is manifestly not in point in the present case.

In Western Union Telegraph Co. v. Cates, supra, suit was brought for failure to deliver a telegram. The court relied upon authorities holding that mere nonfeasance would not ordinarily create a liability to exemplary damages. The court did state the rule to be that the rule as to malice required that the act be accompanied by some evil intent, or "must be the result of such gross negligence—such disregard of another's right—as is deemed equivalent to such intent." In the body of the opinion the court said, after commenting on the fact that the duty there was created by contract:

"Treating the action, however, as one sounding in tort, was plaintiff entitled to recover? As a general rule it may be said that exemplary, punitive, or vindictive damages will not be awarded, unless there is proof going to show a wrongful purpose or reckless indifference to consequences, oppression, insult, rudeness, caprice, willfulness, or other causes of aggravation in the act of omission causing the injury, or because the injury was inflicted maliciously, wantonly, or under circumstances of contumely or indignity, or because the circumstances showed a reckless indifference to duty."

The quotation from Brown v. Allen, supra, shows the conclusion of the court to have been carefully limited by reference to the fact that there was nothing wanton or malicious in the conduct of the constable, nor any unnecessary humiliation inflicted, nor any force used. Further, it is to be observed that it was a case of seizure of household property as that of the husband, a question difficult of determination, and one

upon which means of information are often unavailable.

In the present case the defendant knew the plaintiff had not joined in the mortgage to him, and that he had not made her a party to the action, and was informed prior to the commission of the wholly inexcusable series of torts that the plaintiff owned the property and had not sold it. In spite of such information, without any investigation, and in reckless disregard of her claim, he proceeded as above stated. We have no hesitation in concluding that a reckless insistence in dispossessing this woman from her home under process issued in an action to which she was not a party, and under process that in no manner justified it, even without the aggravation of an altogether illegal arrest, was oppressive in a high degree, and aggravated as it was by the unwarranted arrest was oppressive in the highest degree, and the whole course of conduct was in such reckless disregard of the rights of the plaintiff that from either standpoint, the oppressive character of the conduct, or the reckless disregard of her rights, it was so wanton as to fully justify a conclusion of actual malice. Recklessness has always been considered as equivalent to the evil intent required by the statute. It has become usual to state the rule as follows:

"To authorize a recovery for exemplary or punitive damages, in an action sounding in tort, the evidence must show some element of oppression, fraud or malice; i. e. the act which constitutes the cause of action must have been the result of such gross negligence as is deemed equivalent to such intent."

This is recognized by the cases referred to supra, cited by the defendant, and many others will be found cited in Harlow's Digest, vol. 2, Damages, section 15, p. 898.

And it is the rule that where there is any competent evidence as to the existence of the conditions upon which the right to exemplary damages may be based, the question is one for the jury. Reed v. Fichencord. 96 Okla. 3, 219 P. 937; Williams v. Baldrey, 52 Okla. 126, 152 Pac. 814.

There was ample evidence, even without the evidence of the wrongful arrest, to be submitted to the jury, and to uphold its assessment of the exemplary damages.

(2) The defendant further contends that it was error to assess exemplary damages because the plaintiff was only entitled to nominal damages, if entitled to any damages at all. The contention is frivolous. We cannot conceive how dispossession from a homestead, the loss of rents and profits of the

year, and the arrest, deprivation of liberty, and humiliation, can be considered as not entitling the plaintiff to a substantial allowance of actual damages, not considering the property loss and damage. As to the property loss and damage, the defendant points out no item that could not have been properly allowed by the jury out of all the items in evidence. The brief contains a review of the direct examination of the plaintiff, and from that much is shown that constituted damage that requires no explanation. The only other evidence even referred to is the evidence of the deputy sheriff, and an examination of that contains an admission that in the service of the second writ of assistance he was angry and that he assaulted aud battered the plaintiff with a broom. No specific objection having been made as to the allowance of any item, we would be forced to conclude that the items claimed were properly allowed to the extent of the $250 actual damages assessed, and even disregarding the property damage, we could not consider that $250 allowed as actual damages was at all unreasonable.

(3) The defendant contends that it was all a mistake, because he thought he owned the land. The excuse is untenable. There was evidence brought out by the plaintiff on cross-examination of the defendant that he had informed his attorney that the plaintiff was on the land and would not vacate, and that they concluded that a writ of assistance would be the proper manner in which to obtain possession. He did not attempt to justify on the ground that any consultation with the attorney constituted probable cause, and it is clear that no such justification would have been proper. He was not instituting an action. The writ did not authorize the dispossession of the plaintiff, since she was not a party to the action and claimed under a title antedating the beginning of the action. Terrell v. Allison, 21 Wall, 289, 22 L. Ed. 634, 42 C. J. Mortgages, sec. 1938, p. 274, and cases cited; James v. Graham (S. C.) 78 S. E. 82. He was present with the deputy sheriff participating personally in conduct under process which was expressly limited in its terms and exceeding the authority of the writ by the doing of something in no manner authorized by it. The conduct was tortious and was an abuse of process for which he was responsible as well as was the deputy sheriff. James v. Graham, supra; 50 C. J., Process, sec. 383, p. 618, and cases cited. Being liable, it is clear as heretofore concluded that under the circumstances he was liable both for actual and exemplary damages.

The judgment of the trial court is affirmed.

LESTER, C. J., CLARK, V. C. J., and ANDREWS, McNEILL, and KORNEGAY, JJ., concur. RILEY, HEFNER, and CULLISON, JJ., absent.