**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 18 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ADVANTOR CAPITAL
CORPORATION, a Delaware
corporation, formerly known as
Sonitrol Financial Corporation,

    Plaintiff-Appellee and
    Cross-Appellant,

v.

JAMES HARRISON YEARY;
SONITROL OF OKLAHOMA CITY
INC., an Oklahoma corporation,

    Defendants-Appellants and
    Cross-Appellees,

 and

LINDA JENSEN YEARY,

    Defendant-Appellee.

No. 96-6400
No. 96-6408

---

ADVANTOR CAPITAL
CORPORATION, a Delaware
corporation, formerly known as
Sonitrol Financial Corporation,

      Plaintiff-Appellee,

v.                              No. 97-6106

JAMES HARRISON YEARY;
SONITROL OF OKLAHOMA CITY
INC., an Oklahoma corporation,

      Defendants-Appellants,

and

LINDA JENSEN YEARY,

      Defendant.

---

Appeal from United States District Court
for the Western District of Oklahoma
(D.C. No. 95-CV-2009)

---

Kenneth I. Jones, Jr., Jones & Blaney, of Oklahoma City, Oklahoma, for the appellants.

Terry McCollough, Terry McCollough P.A., of Orlando, Florida (John B. Heatly, Fellers, Snider, Blankenship, Barley & Tippens, of Oklahoma City, Oklahoma, with him on the brief), for the appellees.

---

Before SEYMOUR, Chief Judge, EBEL, and BRISCOE, Circuit Judges.

---

BRISCOE, Circuit Judge.

Defendants James Yeary and Sonitrol of Oklahoma City, Inc., appeal the district court's denial of their motion for judgment as a matter of law on plaintiff Advantor Capital Corporation's fraud and abuse of process claims, and the court's entry of judgment on those claims. Advantor cross-appeals the court's denial of its motion for judgment as a matter of law on defendants' counterclaim.[1] We affirm.

I.

In December 1986, Sonitrol Financial Corporation and its parent, Sonitrol Corporation, commenced case No. 86-2703-A against Sonitrol of Oklahoma City, Inc., in federal district court.[2] The parties and James and Linda Yeary, stockholders of Sonitrol of Oklahoma City, entered into a settlement agreement whereby Sonitrol of Oklahoma City executed two promissory notes to Sonitrol Financial for $337,169.39 and $94,096. The district court entered consent

---

[1] This court issued a show cause order because it was unclear from the docketing statement whether the counterclaim had been adjudicated. See Fed. R. Civ. P. 54(b). After the order was issued, the district court entered an order adjudicating the counterclaim. Accordingly, we have jurisdiction. See Lewis v. B.F. Goodrich, 850 F.2d 641 (10th Cir. 1988).

[2] Jurisdiction in the district court was based on diversity of citizenship and the amount in controversy. 28 U.S.C. § 1332. At the time the complaint was filed, plaintiff was a Virginia corporation, Sonitrol Financial Corporation was located in Florida, James and Linda Yeary resided in Oklahoma, and Sonitrol of Oklahoma City was an Oklahoma corporation.

judgments for Sonitrol Corporation and against Sonitrol of Oklahoma City which totaled the sum of the two promissory notes. In January 1993, Sonitrol Corporation and Sonitrol Financial commenced various garnishment and execution proceedings to enforce the consent judgments. At a hearing concerning his assets, James Yeary testified that no one was holding any property in trust for Sonitrol of Oklahoma City. Kline & Kline, counsel for Sonitrol of Oklahoma City, also represented there were no records of property being held in trust for Sonitrol of Oklahoma City by any third party.

A garnishee summons was issued to Sonitrol of Oklahoma City and to Kline & Kline. Counsel did not answer the summons but moved for a temporary restraining order on behalf of the Yearys in case No. 93-1247-A, a bankruptcy adversary proceeding, to restrain further collection efforts against Sonitrol of Oklahoma City. Counsel asserted the validity of the judgments in 86-2703-A was subject to the bankruptcy proceeding and that it held $150,000 in trust for the Yearys individually, not for Sonitrol of Oklahoma City. The court issued the TRO, preventing Sonitrol Financial from reaching the funds in the trust account.

Sonitrol Financial moved to dissolve the TRO and the court granted its motion on March 2, 1994, finding there had been a "misrepresentation of material facts in obtaining the issuance of" the TRO, and further the TRO had expired on December 17, 1993. There was evidence the money Kline & Kline held in trust

-4-

was for Sonitrol of Oklahoma City. Sonitrol Financial eventually recovered the money in the trust account. Sonitrol Financial entered into a stipulation with the Yearys in 93-1247-A. The Yearys agreed to dismiss with prejudice all of their claims against Sonitrol Financial, including the Yearys' counterclaim, and to "waive all rights, if any, to stay execution or otherwise impede [Sonitrol Financial] from obtaining satisfaction of the judgments." Appellants' Suppl. App. 369.

Advantor, formerly known as Sonitrol Financial, filed the instant action, alleging claims for the wrongfully-entered restraining order, fraud, malicious prosecution, and abuse of process against the Yearys and Sonitrol of Oklahoma City. In addition, it sought punitive damages from James Yeary and Sonitrol of Oklahoma City, and sought to collect on its $94,096 note from Sonitrol of Oklahoma City. The Yearys and Sonitrol of Oklahoma City answered and asserted several affirmative defenses as well as a counterclaim seeking declaratory judgment. Advantor moved for judgment as a matter of law on the counterclaim, contending the parties' stipulation in 93-1247-A precluded consideration of the counterclaim. The court denied the motion.

The trial of this case began on October 22, 1996. Defendants moved for judgment as a matter of law following the close of Advantor's case and the court granted the motion as to Advantor's wrongfully-entered restraining order claim.

-5-

Following the close of all evidence at trial, defendants renewed their motion for judgment as a matter of law and the court granted the motion as to Linda Yeary, but denied the balance of defendants' motion seeking judgment on the abuse of process, fraud, and malicious prosecution claims. The court also denied Advantor's renewed motion for judgment as a matter of law. The jury returned a verdict for Advantor on its abuse of process and fraud claims, but found for defendants on the malicious prosecution claim. The jury awarded actual damages of $88,400 and punitive damages of $100,000, but found Sonitrol of Oklahoma City had paid in full its $94,096 note to Advantor.

## II.

### Defendants' Motions for Judgment as a Matter of law

We review de novo the district court's determination of a motion for judgment as a matter of law, applying the same standard as the district court. Mason v. Oklahoma Turnpike Auth., 115 F.3d 1442, 1450 (10th Cir. 1997). The standard is essentially identical to the "genuine issue" requirement in the summary judgment context. Pendleton v. Conoco Inc., 23 F.3d 281, 286 (10th Cir. 1994). Judgment as a matter of law is warranted "only if the evidence points but one way," Mason, 115 F.3d at 1450, and "[t]he evidence and inferences therefrom must be construed most favorably to the nonmoving party." Wolfgang v. Mid-America Motorsports, Inc., 111 F.3d 1515, 1522 (10th Cir. 1997).

Further, judgment as a matter of law is appropriate if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law. Mason, 115 F.3d at 1450.

*Submission of fraud claim to jury*

Defendants argue that, as a matter of law, no cause of action exists with regard to fraud, misrepresentation, or perjury in connection with underlying litigation. They cite W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 770 n.14 (1983), for the proposition that a party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond. The district court granted summary judgment to defendants on Advantor's wrongful restraining order claim, however, and Advantor does not appeal that ruling. Therefore, Grace is not relevant here.

Defendants also cite Morgan v. Graham, 228 F.2d 625, 627 (10th Cir. 1956), where this court held that, in the absence of a statute to the contrary, an unsuccessful litigant who lost his case because of perjured testimony may not maintain a civil action against the person who committed the perjury. However, we went on to hold perjured testimony can support an action in fraud. On the other hand, Cooper v. Parker-Hughey, 894 P.2d 1096 (Okla. 1995), casts some doubt on a plaintiff's ability, under Oklahoma law, to premise an action for fraud

-7-

solely on perjured testimony. Cooper, who was convicted of rape, alleged the state's expert witness committed perjury. The district court dismissed Cooper's action for tortious perjury, and the Oklahoma Supreme Court affirmed. The court found Okla. Stat. tit. 76, § 2 described an action for deceit or fraud.[3] When a person testifies falsely, however, he deceives the fact finder and the judicial system, not the litigants. Id. at 1100.

Cooper is distinguishable from the instant case in two respects. First, Cooper did not seek damages for fraud so we cannot be certain the Oklahoma Supreme Court would have rejected such an action. In Morgan, this court applied Oklahoma law to find defendant, who had filed a false affidavit and testified falsely, was liable for fraud. 228 F.2d at 627-29. Cooper cites Morgan for the proposition that there is no civil cause of action for perjury, but does not disapprove of this court's interpretation of Oklahoma law that perjury can support an action for fraud. 894 P.2d at 1100 n.3. Second, and more importantly, Advantor's case was premised on more than James Yeary's false testimony. Counsel for Sonitrol of Oklahoma City misrepresented facts to the court and in a letter to counsel for Advantor. While misrepresentation to the court could, like perjury, be considered deceit upon the judicial system rather than upon Advantor,

---

[3] Okla. Stat. tit. 76, § 2 provides that "[o]ne who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

the letter to counsel for Advantor surely manifests an intent to deceive Advantor.

Finally, defendants cite <u>Security State Bank v. Reger</u>, 151 P. 1170, 1171 (Okla. 1915), where the court held no action lies for fraudulently aiding a debtor to dispose of his property to prevent a general creditor from attaching it. However, Advantor was a *judgment* creditor, not a general creditor. Therefore, <u>Reger</u> is inapposite. The district court did not err in denying defendants' motion for judgment as a matter of law on Advantor's fraud claim.


*Submission of abuse of process claim to jury*

Defendants also contend the district court erred in submitting the issue of abuse of process to the jury. In essence, they argue there was insufficient evidence to satisfy the elements of such a cause of action. The elements of abuse of process under Oklahoma law are "(1) the improper use of the court's process (2) *primarily* for an ulterior or improper purpose (3) with resulting damage to the plaintiff asserting the misuse." <u>Greenberg v. Wolfberg</u>, 890 P.2d 895, 905 (Okla. 1994). Courts have also required the plaintiff to prove "a willful act in the use of process not proper in the regular conduct of the proceeding." <u>Meyers v. Ideal Basic Indus., Inc.</u>, 940 F.2d 1379, 1382 (10th Cir. 1991).

Defendants cite <u>Hokanson v. Lichtor</u>, 626 P.2d 214, 222 (Kan. App. 1981), where the court held the basis for liability for abuse of process "is not the

wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings," but rather misuse of process. Defendants submit resolution of the issue of whether the TRO was properly obtained does not decide the issue of whether Advantor has a cause of action for abuse of process. Defendants' argument goes to the distinction between abuse of process and malicious prosecution. Malicious prosecution "is concerned with maliciously causing process to issue," while abuse of process "is concerned with the improper use of process after it has been issued." Jackson & Scherer, Inc. v. Washburn, 496 P.2d 1358, 1366 (Kan. 1972). As the district court instructed the jury, however, the complained of issuance of process was the Yearys' filing of a motion for TRO and serving the motion on Advantor, not the court's issuance of the TRO. The facts of this case would support an action for abuse of process in that James Yeary's misrepresentation at the TRO hearing occurred after process had been issued.

Defendants also cite to Restatement (Second) of Torts, which provides that the gravamen of an action for abuse of process is the "'misuse' of legal process for some purpose other than that which it was designed to accomplish." See Gore v. Taylor, 792 P.2d 432, 436 (Okla. App. 1990) (citing Restatement (Second) of Torts § 682 cmt. a (1977)). Defendants contend there can be no abuse of process unless plaintiff can show the process was used for some purpose other than that

for which it was designed. According to the Yearys, they used the TRO for a permissible purpose, i.e., to restrain collection activities by Advantor.

At first blush, defendants' argument appears to have merit. However, in Greenberg, the court explained there may be abuse of process if the process is not "used legitimately to its *authorized* conclusion." 890 P.2d at 905. Comment b to Restatement § 682 also elaborates on the principle that abuse of process involves the use of process *primarily* to accomplish a purpose for which it is not designed:

> The significance of [the word "primarily"] is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. Thus, the entirely *justified* prosecution of another on a criminal charge, does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm; nor does the instigation of *justified* bankruptcy proceedings become abuse of process merely because the instigator hopes to derive benefit from the closing down of the business of a competitor.

(Emphasis added.) This case is distinguishable from the Restatement examples. First, one can argue the Yearys' pursuit of a TRO was not justified because their objective was to conceal assets of Sonitrol of Oklahoma City. Second, the Yearys' ulterior purpose in moving for the TRO, concealment of assets, was not merely incidental to some legitimate purpose.

The district court's denial of defendants' motion for judgment as a matter of law is in line with Oklahoma case law. See Ellison v. An-Son Corp., 751 P.2d 1102, 1105-06 (Okla. App. 1987) (reversing district court's grant of summary

-11-

judgment on Ellison's abuse of process claim where there was evidence that purpose behind An-Son's lawsuit to cancel Ellison's mineral lease was to "tie up" the lease); Spencer v. Arnold, 4 P. 2d 55 (Okla. 1931) (upholding verdict for plaintiff on abuse of process claim where plaintiff told defendant she owned the land she occupied, and defendant, without further inquiry, filed trespass action). Courts which have dismissed abuse of process claims have often done so because plaintiff has failed to prove an improper "willful act" in the use of legal process. See, e.g., Meyers, 940 F.2d at 1383 (applying Oklahoma law to affirm dismissal of abuse of process claim where plaintiff alleged defendant had filed suit to intimidate plaintiff, but alleged no further willful act in use of the process); Gore, 792 P.2d at 437 (no willful act in use of process where defendant, who on information and belief had filed lawsuit alleging fraud, merely commented on suit's incidental effect on settlement of unrelated matter).[4]

---

[4] Defendants cite two cases which applied Illinois law to hold perjured testimony did not constitute an abuse of process. In Erlich v. Lopin-Erlich, 553 N.E.2d 21 (Ill. App. Ct. 1990), defendants sought a TRO to restrain plaintiff from concealing marital assets. Following a hearing on the motion, plaintiff sued defendants for abuse of process, alleging a defense witness testified falsely. The court held it was proper in a marriage dissolution proceeding to prevent one spouse from disposing of marital assets and that seeking a TRO was therefore proper in the regular course of the proceedings. The fact that the defense made misrepresentations to the court to obtain the TRO was irrelevant. See also Wainwright v. Doria, No. 93 C 0095, 1994 WL 178347 (N.D. Ill. May 9, 1994) (presentation of perjured testimony insufficient to constitute abuse of process where defendant instituted eviction proceeding for legitimate purpose of evicting plaintiffs). Illinois' definition of abuse of process is similar to that of Oklahoma and requires proof of two elements--ulterior purpose and an act in the use of legal process not proper in the

(continued...)

-12-

The district court properly instructed the jury on the elements of abuse of process. The court instructed the jury that the Yearys' filing and serving of a motion for a TRO constituted issuance of legal process. Further, there was sufficient evidence for the jury to find defendants had the ulterior motive of concealing assets and that defendants committed an act, misrepresentation, that was not proper in the regular course of a proceeding to obtain a TRO. The court did not err in denying defendants' motion for judgment as a matter of law.

## Allowable Damages

Defendants maintain Advantor was not entitled to recover damages for loss of use of the $150,000 in the trust fund or for attorney fees incurred in trying to obtain that money. Essentially, they argue the district court incorrectly stated the law when it instructed the jury it could consider such items. This court conducts a de novo review to determine whether, as a whole, the instructions "correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards." Harrison v. Eddy Potash, Inc., 112 F.3d 1437, 1442 (10th Cir. 1997).

Advantor presented evidence that defendants frustrated its efforts to obtain

---

[4](...continued)
regular prosecution of the proceedings. Erlich, 553 N.E.2d at 22. Apparently, Illinois does not consider perjury to be an improper act in use of legal process. No court outside Illinois has cited either Erlich or Wainwright, however, and we decline to follow these cases.

the $150,000 trust fund from May 1993 until December 1994. However, defendants argue Advantor's damages are limited to those incurred while the TRO was in effect. See, e.g., Houghton v. Cortelyou, 208 U.S. 149, 160 (1908); Monolith Portland Midwest Co. v. Reconstruction Fin. Corp., 128 F. Supp. 824, 878 (S.D. Cal. 1955). Defendants also contend that, contrary to the court's instructions, Advantor was not entitled to recover attorney fees and other expenses incurred in resisting the TRO. See, e.g., Missouri, Kan., & Tex. Ry. Co. v. Elliott, 184 U.S. 530, 539 (1902); Monolith, 128 F. Supp. at 878. However, the jury awarded Advantor damages for abuse of process and fraud, not for the wrongfully-entered restraining order. The cases defendants cite are inapposite.

Defendants next argue Advantor had no right to the money in the trust account at the time it attempted to garnish the funds. They submit the money was loaned to Sonitrol of Oklahoma City for a specific purpose, i.e., to fund the Yearys' Chapter 13 plan. They cite Jacobs v. Colcord, 275 P. 649, 652-53 (Okla. 1929), for the proposition that funds loaned to a debtor for the purpose of retiring a specific debt are not subject to garnishment by the debtor's general creditors. See also Remes v. Schwarz Paper Co., 164 B.R. 557, 559 (W.D. Mich. 1994) ("[F]unds loaned to a debtor that are 'earmarked' for a particular creditor do not belong to the debtor because he does not control them."); Haskins v. Spears, 22 B.R. 367 (Bankr. W.D. Okla. 1982) (funds representing contingent liabilities are

-14-

not subject to garnishment).

The judgments Advantor sought to enforce by garnishment were against Sonitrol of Oklahoma City, not the Yearys, and Advantor presented evidence at trial that the money in the trust account was held for Sonitrol of Oklahoma City, not the Yearys. The cases cited by defendants do not apply because the funds Advantor sought to garnish were not loaned to the Yearys, but to Sonitrol of Oklahoma City. More importantly, defendants did not raise the "earmarking" defense in an answer to the garnishment summons. Instead, they denied existence of the trust fund, having unilaterally determined the fund was not subject to control of Sonitrol of Oklahoma City. As noted by the district court, defendants deprived the parties of the opportunity to litigate the issue: "[N]obody on [Advantor's] side had a chance to hit the ball because the ball was hidden." Appellants' App. at 247. The cases cited by defendants do not support the proposition that a garnishee can conceal the nature of its assets and later avoid liability for fraud and abuse of process on the grounds that the nature of its assets precluded garnishment.

**Amount of Damages**

Defendants contend Advantor's evidence of actual damages supported a maximum award of $61,850, which is $26,550 less than the $88,400 in actual

damages awarded. Advantor presented evidence it incurred $44,290 in unrecovered attorney fees between May 1993 and December 1994 and that it could have earned $17,560 in interest on the $150,000 during that time period. Defendants argue the jury's award of $88,400 in actual damages was against the weight of the evidence. "Our review focuses on whether the verdict is clearly, decidedly, or overwhelmingly against the weight of the evidence, with the trial court's decision to stand absent a showing of a manifest abuse of discretion." Continental Cas Co. v. Southwestern Bell Tel. Co., 860 F.2d 970, 972 (10th Cir. 1988).

The jury was instructed that, if it found for Advantor, it could assess as actual damages an amount that would "fairly and justly compensate plaintiff for harm directly caused by the wrongful conduct." Appellants' App. at 170. In addition to the evidence regarding attorney fees and interest, Advantor's vice president testified he himself invested time pursuing the trust fund and he rearranged his schedule to accommodate court appearances and meetings with counsel. The jury could properly have considered these factors in determining Advantor's damages. The fact finder is "clothed with a wide latitude and discretion in fixing damages, pursuant to the court's instructions, deemed proper to fairly compensate the injured party." Bennett v. Longacre, 774 F.2d 1024, 1028 (10th Cir. 1985). "[T]he amount of damages awarded by a jury can be

-16-

supported by any competent evidence tending to sustain it." Id. at 1028. We cannot conclude the jury's award of damages was clearly, decidedly, or overwhelmingly against the weight of the evidence.

## Cross-Appeal

The stipulation in 93-1247-A between the Yearys and Sonitrol Financial contained the following recitation of the course of litigation between Sonitrol Financial and defendants: The Yearys filed an answer in 93-1247-A and counterclaimed that Sonitrol Financial had acted in bad faith. The Yearys moved the court for a TRO to prevent Sonitrol Financial from attempting to collect on its judgments against Sonitrol of Oklahoma City in 86-2703-A. The district court issued a TRO, but later dissolved it. The Yearys moved for a preliminary injunction to prevent Sonitrol Financial from enforcing its judgments against Sonitrol of Oklahoma City, and the district court denied the motion. The operative provisions of the stipulation are:

7. The parties hereby stipulate and agree that an order may be entered in this case dismissing with prejudice all of the Yearys' claims against [Sonitrol Financial], including without limitation, the counterclaim and any and all claims asserted by the Yearys in this case.
8. The parties hereby stipulate and agree that the dismissal with prejudice is expressly conditioned upon the [Yearys] waiving any right they may have to seek reconsideration, appeal or review of the district court's orders of March 2, 1994, and October 3, 1994. Further, the Yearys, individually, stipulate and agree to waive all rights, if any, to stay execution or otherwise impede [Sonitrol Financial] from obtaining satisfaction of the judgments rendered in

CIV-86-2703-A.

Appellee's Suppl. App. at 368-69. The district court dismissed with prejudice all claims asserted by the Yearys in their counterclaim, as well as all other claims of the Yearys set forth in the stipulation.

Advantor argues, as a matter of law, defendants waived their right to assert their affirmative defense of payment to Advantor's note claim and their counterclaim in this case. Advantor submits the claims dismissed in 93-1247-A are substantially the same as those asserted by the Yearys here.

The district court rejected Advantor's argument when it denied Advantor's motion for judgment as a matter of law prior to trial and again at the close of evidence. Advantor sought to bar defendants' argument that the two judgments entered against Sonitrol of Oklahoma City in 86-2703-A had been paid and that the debt to Sonitrol Financial had therefore been fully satisfied. The court found the amount of any remaining debt was an issue of fact to be decided by the jury. The dispute between the parties went to whether defendants were entitled to fully collect on the judgments and also on the underlying notes. We review de novo the denial of Advantor's motion for judgment as a matter of law.

Advantor argues we should treat the stipulation in this case like a contract, see McFarling v. Demco, Inc., 546 P.2d 625, 630 (Okla. 1976) (some stipulations are tantamount to contracts), and that as an unambiguous contract, its

-18-

interpretation is a matter of law for the court, Lewis v. Sac & Fox Tribe of Okla. Housing Auth., 896 P.2d 503, 514 (Okla. 1994).  If an agreement contains ambiguities, however, the intent of the parties is a question of fact for the jury to decide.  Sonitrol Fin. Corp. v. Oklahoma City Abstract & Title Co., 55 F.3d 504, 507 (10th Cir. 1995).  The Oklahoma Supreme Court has specifically held waiver is a question of fact to be determined by the jury.  Bay Petroleum Corp. v. May, 264 P.2d 734, 736 (Okla. 1953).  "Whether facts on which a claim of waiver is based have been proved, is a question for the trier of the facts, but whether those facts, if proved, amount to a waiver is a question of law."  Garvey v. Blatchford Calf Meal Co., 119 F.2d 973, 975 (7th Cir. 1941).  The burden of proof is on the party invoking the bar of waiver.  Hall v. Duncan Sav. & Loan Ass'n, 820 P.2d 1360, 1362 (Okla. App. 1991).

Defendants respond they did not intend to waive their right to assert their affirmative defense and counterclaim in this case by virtue of the stipulation in 93-1247-A, in that their defense of payment and counterclaim had not yet arisen at the time they entered into the stipulation.  They submit they did not make the final payment satisfying the judgments against them until the court entered its agreed order on December 20, 1994.  Indeed, the counterclaim in this case specifically alleged Sonitrol Financial was required to release its consent judgments against Sonitrol of Oklahoma City as of December 12, 1994.  The

December 20 agreed order evidences defendants' belief that the stipulation did not constitute a waiver of their right to assert their subsequent payment to Advantor. The agreed order stated Sonitrol of Oklahoma City "disputes the amount claimed due by [Sonitrol Financial] in its Garnishee Summons and Affidavit, but consents to disbursement of the above-referenced funds to [Sonitrol Financial]." Appellee's Suppl. App. at 306.

Oklahoma law supports the concept that only a known, existing right can be waived. In <u>Faulkenberry v. Kansas City S. Ry. Co.</u>, 602 P.2d 203 (Okla. 1979), plaintiff entered into an out-of-court settlement with his employer and signed a waiver of his rights under the Federal Employers' Liability Act. Plaintiff later sought to avoid the waiver, asserting defendant did not inform him of his rights under the Act. The Oklahoma Supreme Court upheld a verdict for plaintiff, finding there was evidence that plaintiff did not have knowledge at the time of the transaction of the existence of his rights and of all the material facts upon which they depended. <u>See</u> <u>also</u> <u>Silver v. Slusher</u>, 770 P.2d 878, 882 n.12 (Okla. 1988) ("'Waiver' is the voluntary, intentional relinquishment of a known right. The person against whom waiver is asserted . . . must have had full knowledge of the existence of his rights."); <u>Irwin v. Irwin</u>, 136 P.2d 940, 942 (Okla. 1943) ("Waiver is the intentional relinquishment of a known right. If there is no right there is nothing to waive.").

Admittedly, the Yearys agreed to "waive all rights, if any, to stay execution or otherwise impede [Sonitrol Financial] from obtaining satisfaction of the judgments rendered in CIV-86-2703-A." Appellee's Suppl. App. at 369. A strong argument can be made, however, that the parties did not intend that the stipulation bar defendants from asserting they subsequently satisfied the judgment, i.e., proper credit for payments made. The interpretation of this ambiguous stipulation and the question of whether Advantor proved the facts on which it bases its claim of waiver were questions of fact properly submitted to the jury.

AFFIRMED.