CASE 86—PETITION ORDINARY—MAY 17.

# Lancaster v. McKay.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

1. MALICIOUS PROSECUTION—PROBABLE CAUSE—EVIDENCE.—In an action for malicious prosecution "probable cause" as a defense is such a state of facts and circumstances as would lead a careful and conscientious man to believe the plaintiff guilty; and in this case the fact that plaintiff believed that defendant was justly indebted to him in a larger sum than the sum collected by plaintiff as defendant's attorney, which he had failed to pay over, and that he had in good faith instituted a suit to collect the same, is no evidence of the want of probable cause after the courts had found against the plaintiff's contention; and the fact that the proceeding instituted by the prosecutor under the statute to suspend the attorney from practice because of his failure to pay over the money, was dismissed because of the pendency of the action be-

Lancaster v. McKay.

tween the parties to determine the right of the attorney to retain
the same, does not preclude the prosecutor, in an action against
him for malicious prosecution, from relying upon all legal de-
fenses to the action.

2. PROBABLE CAUSE—PEREMPTORY INSTRUCTION.—Ordinarily want of
probable cause is a mixed question of law and fact, and if there
is conflicting testimony, or the credibility of witnesses to be
passed on, the question should be submitted to the jury; but
where there is no dispute about the facts, it is a question of law
for the court.

T. L. BURNETT, BEN SPALDING AND LANE & BURNETT FOR
APPELLANT.

1. To enable one to maintain an action for malicious prosecution
without probable cause of a charge in a court having jurisdiction
to investigate the truth or falsity of the charge, it is indispensa-
ble that the accused should have been innocent of the matters
charged against him, and that the prosecutor of the charges
should have had no probable grounds to believe them to be true,
and in preferring and prosecuting the charges was actuated by
malice. Bell v. Pearcy, 5 Iredell, 841; Threefoot v. Nuckles, 68
Miss., 123; Newton v. Weaver, 13 R. I., 617; Adams v. Lisher, 3
Blackford, 245; Parkhurst v. Castillar, 57 Ia., 478; Whitehurst v.
Ward, 12 Ala., 264; Barber v. Gould, 20 Hun., 447; Turner v. Din-
negar, 20 Hun., 466; Dumpsey v. State, 11 S. W., 373 (Texas);
Johnson v. The State, 22 S. W., 43 (Texas); Hurlburt v Boaz, 23
S. W., 448 (Texas); Morris v. Carson, 7 Cowan, 784; Maddox v.
McGinnis, 7 Mon., 372; Ross v. Neil, 7 Mon., 407.

2. The probable cause that constitutes a defense to an action for ma-
licious prosecution is the existence of such facts and circum-
stances as would excite the belief in a reasonable mind, acting on
the facts within the knowledge of the prosecutor, that the per-
son was guilty. Wheeler v. Nesbitt, 24 Howard, 551; Barron v.
Mason, 31 Vt., 198; Lacey v. Mitchell, 23 Ind., 67; Bacon v. Towne,
4 Cushing, 238; Davis v. Wisher, 72 Ill., 266; Brown v. Willough-
by, 5 Col., 1; Jordan v. Alabama, 81 Ala., 220; Landa v. Hoburt,
45 Texas, 539; Mowry v. Whipple, 8 R. I., 360; McGearn v. Brack-
et, 33 Me., 332; Hegny v. Blair, 62 N. Y., 22; Walker v. Camp,
63 Iowa, 630; Cooper v. Utterback, 37 Md., 318.

3. The facts were undisputed, and as to whether or not they consti-

Lancaster v. McKay.

tuted probable cause was a question of law for the court, and the court should have given the peremptory instruction asked. Stewart v. Sonneborn, 98 U. S., 187; Crescent City v. Butcher's Union, 120 U. S., 141 (33 La Ann., 934); Spring v. Besore, 12 B. M., 555.

PRYOR, O'NEIL & PRYOR FOR APPELLEE.

1. The motion against an attorney to disbar involves a right to an office, franchise, or freehold, and that being true, when a party induces the Commonwealth to set upon foot such an oppressive proceeding, it should be in a cause where there is a clear right to the remedy; the use of criminal process to enforce a civil claim is an intolerable abuse even where the claim exists. Turner v. Commonwealth, 1 Met., 237; Connell v. Michael, 6 La. Ann., 577; Kelly v. Sage, 12 Kan., 109; Gable v. Williams, 49 Tex., 131; Addison on Torts, vol. 2, p. 868.

2. In the case of the Commonwealth v. McKay, it was held that the proceedings on the first rule was a bar to the second rule; that being true how can the proceedings upon the second rule be justified or excused.

3. At the date of the second rule the appellee was prosecuting vigorously and without delay his claim against the appellant, and appellant knew that the plaintiff then in good faith was asserting the claim against him, and instituted the prosecution to have him disbarred; under these circumstances he was liable in a suit for malicious prosecution. Addison on Torts, sec. 854; Weaver v. Townsend, 14 Wend. (N. Y.), 192.

4. Probable cause is such a state of facts in the mind of the prosecutor as would lead one of ordinary caution and prudence to believe, or entertain an honest and strong suspicion that the person is guilty. Newell on Malicious Prosecution, pp. 252 and 258; Yocum v. Polly, 1 B. M., 359; Brown v. Morris, 3 Bush, 81.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

This is an action by appellee against appellant to recover damages for having maliciously and without probable cause instituted a proceeding in the Jefferson Circuit Court, under section 104, Ky. Statutes, to suspend him from practicing as an attorney for refusing to pay over to

Lancaster v. McKay.

appellant certain money which had been collected by ap-
pellee as his attorney.

The facts out of which this litigation grew, as shown by
the pleadings and proof, are about as follows: In 1879 two
brothers of appellant, Samuel and Matt Lancester, made
an assignment for the benefit of their creditors, and at
the assignee's sale appellant purchased two farms near
Bardstown, on which his brothers resided, a distillery and
a lot of personal property, leaving his brothers in posses-
sion of this property, which they continued to hold and op-
erate in the same way as before, as agents.   In 1887 some
of the creditors of Samuel and Matt Lancaster instituted
suits in the Nelson Circuit Court against them and appel-
lant, charging that this property was secretly held by ap-
pellant in his name for his brothers, they having refunded
to him the purchase money, taking out attachments which
were levied on the land and the distillery.   Appellant em-
ployed appellee, then a practicing lawyer, to defend these
suits, in connection with another attorney, at an agreed
fee, the contract of employment being reduced to writing
by appellee.  After the issues in these actions were·
made up and proof had been taken, the creditors filed an
amended petition changing the grounds of complaint and
seeking to recover judgment against appellant personally,
it being alleged that he was indebted to his brothers for
services in a large sum of money, and a change of venue
was had to the Bullitt Circuit Court.   Appellee obtained
judgment for defendant in the circuit court, which was
affirmed in this court, and after these suits were finally
settled appellant paid to appellee the agreed fee.

About the time that litigation was concluded appellant placed an account for $430 against the estate of John Callahan, deceased, in the hands of appellee for collection, and appellee, acting as attorney for appellant, collected this claim in July, 1890. Appellee did not report this collection to appellant, and upon demand refused to pay over the money, because as he alleges appellant was indebted to him in the sum of $2,500 for additional services rendered in the cases in the Nelson and Bullitt Circuit Courts, upon issues raised by the amended petition, which were not contemplated at the time the contract for those cases was entered into, and soon thereafter, in September, 1891, appellee instituted a suit in the Bullitt Circuit Court to recover of appellant the sum of $2,500, as additional compensation for services rendered over and above the services covered by the written contract, crediting appellant with the amount collected from Callahan's administrator. Appellant answered, denying the claim for this additional compensation and relying upon the written contract between himself and appellee, and asked that the credit of the Callahan collection be stricken from the claim sued on, which was done. Appellant thereafter, on October 21, 1891, filed his petition in the Jefferson Circuit Court, in which he sought to have a rule issued against appellee suspending him from practicing as an attorney for failing to pay over the Callahan collection. The court refused to grant the rule and dismissed the petition, for the reason that it appeared that appellee was in good faith prosecuting a claim in the Bullitt Circuit Court for an alleged indebtedness greatly exceeding the amount alleged to be

due appellant from him. On May 20, 1892, the Bullitt Circuit Court decided that the contract between appellant and appellee covered all the services rendered by the latter and rendered a judgment in favor of appellant, from which appellee prayed an appeal to the superior court. On June 9, 1892, appellant renewed his motion in the Jefferson Circuit Court, based upon a new petition and affidavit, to have appellee suspended from practicing for refusing to pay over the money collected by him from Callahan's administrator.

After the institution of this second proceeding appellee executed a bond superseding the execution of the judgment of the Bullitt Circuit Court and appealed to the superior court, and thereafter filed his response to the second proceeding against him in the Jefferson Circuit Court, in which he set up substantially- the same matters contained in his response to the first procceeding in October, 1891; admitting, however, the judgment of the Bullitt Circuit Court dismissing his petition, and setting out that he had appealed and superseded the execution of the judgment of that court and pleading that the judgment of the Jefferson Circuit Court in the first proceeding against him was a bar to the second. The judge of the Jefferson Circuit Côurt dismissed appellant's second petition, on the ground that the litigation between the parties inaugurated in Bullitt county was still pending, and upon appeal that judgment was affirmed in this court.

In the meantime, while the appeal from the Bullitt Circuit Court was pending in, and undecided by, the superior

court, appellee instituted this action in the Jefferson Circuit Court against appellant to recover damages for malicious prosecution in the suing out of the two rules against him. But before the pleadings in this action were fully made up the superior court affirmed the judgment of the Bullitt Circuit Court, and appellant, by supplemental pleadings herein, set up and relied on this final determination of the case in the Bullitt Circuit Court.

A trial was had in November, 1894, which resulted in a verdict against appellant for $2,500. Upon motion for a new trial this judgment was set aside, and the case was again tried in November, 1895, on the same issues, resulting in a verdict and judgment for appellee, which we are asked on this appeal to reverse.

Numerous grounds for reversal have been assigned, viz., errors in the admission of incompetent testimony and in the instructions given to the jury, and the refusal of the court to give instructions asked for defendant.

Upon the trial appellee testified, in substance, that he had refused to pay over to appellant the money collected, as his attorney, from Callahan's administrator because he had given credit for this collection on what he believed was a just claim in his favor against appellant, for which he had instituted action in the Bullitt Circuit Court; and that, notwithstanding the determination of that suit adversely to his contention, he still retained the money.

To maintain this action, it is indispensable that the plaintiff should prove that the proceedings in the Jefferson Circuit Court to suspend him from the practice of law as an attorney were begun and prosecuted by appellant mali-

Lancaster v. McKay.

cously, and without probable cause. "In actions for malicious prosecution the controversy is generally upon the question of probable cause, the want of which is an indispensable element in plaintiff's case, and as to which the burden of proof is upon him." (See Newell on Malicious Prosecution, p. 267.) Other grounds may be inferred from this, but this ground can never be inferred from anything else; and this case is not an exception to this general rule.

It is therefore important that we should have a clear conception of what is meant by the words "probable cause," and what facts and circumstances are necessary to give rise to the condition expressed by them, which are sufficient to constitute a defense to an action for malicious prosecution.

In Wheeler v. Nesbitt, 24 Howard (U. S. S. C. Reps.) 551 "probable cause" is defined as "the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted;" in Barren v. Mason, 31 Ver., 189, as "such information as would induce a reasonable and prudent man to believe the plaintiff guilty;" in Bacon v. Town, 4 Cushing, 238, as "such a state of fact in the mind of the prosecutor as would lead a man of ordinary caution and prudence to entertain an honest and strong suspicion that the person arrested is guilty;" in Langor v. Obert, 45 Tex., 539, as "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the person accused is guilty of the offense with which he is charged;" in Mowry v. Whipple, 8 R. I., 360, as "an honest and reasonable belief in the

defendant's guilt;" in Hegne v. Blair, 62 N. Y. 22, as "such a state of facts and circumstances as would lead a man of ordinary caution and prudence, acting conscientiously impartially, reasonably, and without prejudice upon the facts within his knowledge, to believe that the person accused is guilty;" and in Walker v. Camp, 63 Iowa, 630 as "such a state of facts and circumstances as would lead a careful and conscientious man to believe the plaintiff guilty."

And it is equally essential to the maintenance of this action that the plaintiff should prove that at the time the proceedings complained of were instituted he was not guilty of having wrongfully failed and refused, upon demand, to pay to the defendant the money which he had collected for him, as attorney, from Callahan's administrator. If at the date of the institution of these proceedings he was legally indebted to the defendant for this money, and the defendant was not legally indebted to him for a greater amount, or any amount,—then his refusal to pay on demand was wrongful, and defendant had the right, under Sec. 104, Ky. Stats., to institute the proceedings which are the basis of this action, and this suit can not be successfully maintained. The fact that plaintiff believed that defendant was justly indebted to him in a larger amount than the sum collected from Callahan's administrator and that he had in good faith instituted his suit in the Bullitt Circuit Court to collect same, is no evidence of the want of probable cause in this action, after the courts had all found against his contention, and in favor of defendant. The authorities on this point are numerous and conclusive.

Lancaster v. McKay.

In passing upon this question in Bell v. Pearcy, 5 Iredell, 84, an action for malicious prosecution, the court said:

"The grounds of this action have been said to be, on the plaintiff's side, innocence, and on, the defendant's side, malice. The innocence of the plaintiff which is meant is not merely that he is able, on the trial, to prove himself not guilty, but it is such entire innocence that there were no just grounds or probable cause to suspect his guilt.

'There is no doubt that a defendant in this action may allege that the plaintiff, though acquitted in the prosecution, was actually guilty, and that he may prove his guilt by evidence in his power, though discovered after the pro-- secution began or after it ended. The law does not give the action to a guilty man; he brings it as an innocent one, and if it appear on the trial in any way that he is not, he must fail."

In Threefoot v. Nuckols, 68 Mo., the court said:

"Surely no reason can be assigned, nor any respectable authority produced, to justify the shocking proposition that the guilt of the plaintiff in a suit for malicious prosecution may not be shown in any manner or by any proof, no matter how or where or when acquired. Reason and conscience revolt at the bare thought of a proven criminal recovering damages against the prosecutor."

In Newton v. Weaver, 13 R. I., 607, the court said:

"The action for malicious prosecution was designed for the benefit of the innocent, and not of the guilty. It matters not whether there was proper cause for the prosecution, or how malicious may have been the motives of the

[ 40 ]

prosecutor; if the accused is guilty, he has no legal cause of complaint."

In Parkhurst v. Castiller, 67 Iowa, 478, the court said:

"According to the weight of authority, the rule appears to be, that if the defendant can satisfy the jury that the plaintiff, notwithstanding his acquittal, was in fact guilty of the crime with which he was charged, no recovery can be had."

In Whitehurst v. Ward, 12 Ala., 264, the court said:

"That the plaintiff was guilty of the offense charged, is a full answer to the action for malicious prosecution."

In Turner v. Dinnegar, 20 Hun., 476, the court said:

"Actual guilt is conclusive evidence of proper cause. The action in such a case can not be sustained, however much malice may be shown, or however improper may have been the motives of the prosecution."

And in Wood v. Laycox, 3 Met., 194, this court said:

"It is a well established principle that a plaintiff can not maintain an action for the malicious prosecution of a civil suit until after the legal termination in his favor of the suit complained of, "citing 12 B. M., 553, 3 Monroe, 209, and First Hilliard on Torts, 495.

There is no dispute about the facts in this case. Plaintiff collected the money of defendant as his attorney and upon demand refused to pay it over; and notwithstanding both the Bullitt Circuit Court and the superior court have decided that he had no legal claim against the defendant, either at the date of the collection or at the time of the institution of the proceeding by rule in the Jefferson Circuit

Lancaster v. McKay.

Court, he is still in default as to this money, as he himself admits.

Ordinarily, "want of probable cause" is a mixed question of law and fact, and if conflicting testimony is to be weighed or the credibility of witnesses is to be passed on, the fact of the existence or non-existence of probable cause should be submitted to the jury with proper instructions as to the law, but where there is no dispute about facts, as in this case, it is the duty of the court, on the trial, to apply the law to them and pronounce upon the legal effect of the evidence without the intervention of a jury. Here the judgments of the courts and the admissions of the plaintiff leave nothing in dispute, so far as the facts are concerned.

There is nothing in the judgments of the Jefferson Circuit Court, on either of the rules taken out by defendant against plaintiff, which precludes appellant from relying upon his legal defenses to this action for malicious prosecution. The real merits of the controversy between the parties were not passed on or considered in either of those proceedings. The response of the plaintiff in each instance was treated only as a plea in abatement to the jurisdiction of the court.

The motion in this action for a peremptory instruction should have prevailed, and for the reasons indicated the judgment is reversed and the cause remanded for proceedings consistent herewith.