# Christopher v. Henry et al.

Oct. 18, 1940.

W. J. Baxter, Judge.

Márcus C. Redwine for appellant.

Benton & Davis for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Chapter 16, Section 216a-1 et seq., of Baldwin's 1936 Revision of Carroll's Kentucky Statutes contains our statutory law with reference to "Charitable and Correctional Institutions." In the main its various provisions were enacted by Chapter 16, page 81, of the regular session acts of our General Assembly in 1928, which, of course, superseded prior statutes covering the same subjects. Section 216aa-68 and immediately succeeding ones relate to "Inquests Concerning Insanity," prescribing how and when and before whom such inquiries may be made, and also what should be done with the patient if it should be found that he was so mentally deranged as to require treatment of and indefinite incarceration in one of the eleemosynary institutions of the commonwealth, none of which have anything to do with the matters involved in this litigation. The statute was amended in 1936 by the enactment of chapter 16 of the acts of 1936, and which amendment is carried in the volume of our statutes supra as Section 216aa-77a. It prescribes for the apprehension and detention of persons (though not necessarily completely insane) whose mental condition "is so abnormal that the safety of the person or of the public requires that he be committed for a period of care and further medical examination and observation of his mental condition"; but not for a period exceeding 35 days. The court issuing the process for such temporary confinement for the purpose indicated is authorized by the provision of the statute to direct the arrest or apprehension of the suspected patient upon the filing with him of the certificate of two physicians stating that in their opinion the patient is in the mental condition described in the amendment. But that section itself does not expressly require that the certificates of the two physicians shall state that they had previously examined the patient as a basis for their conclusion. However, the immediately preceding Section 216aa-77— which is a part of the original 1928 statute relating to the incarceration of patients found to be permanently insane—does require that the physicians shall expressly state in their certificates, not only the fact of the patient's mental condition, but also "that the person has been examined by each of the mental examiners making the certificate within three days prior to the date of the certificate," etc., which, of course, could not be done by hearsay of one of the physicians, unless he contacted the patient within three days prior to the issuing of his cer-

tificate. We will pass, for the purposes of this case, the question as to whether the required certificate for the thirty-five day incarceration for examination purposes should also state that the certifying physicians had examined the patient within three days prior to their making the same as is required by the 1928 act in order to incarcerate the patient in one of the public institutions, as being completely insane, at least temporarily.

The appellant, W. J. Christopher, was and is a farmer living some four, five or six miles from the city of Winchester, Kentucky. On the forenoon of September 18, 1937, the then county judge of Clark County (of which Winchester is the county seat), Joe Lindsay (the circuit judge then being absent from the county), received information that plaintiff herein was acting strangely and threatening to do personal harm to himself and to members of his family by threatening to kill them, and had obtained his shot gun and was otherwise engaged in conduct, actions and threats that might endanger himself or members of his family or, perhaps, strangers. The judge immediately applied to the defendant and appellee, G. H. Clark, a physician of high standing in Winchester, to examine plaintiff and certify his conclusions therefrom. Dr. Clark went to the residence of plaintiff at about 12:30 P. M. on that day and consulted for some two hours with the members of plaintiff's family, consisting of his wife and several children, some of whom were adults, whereby he obtained a history of plaintiff's past conduct. It consisted of not only what occurred in the forenoon of that day, but likewise what occurred on previous occasions reaching back some four or five years, together with other information more or less persuasive of plaintiff's mental impairment. He was informed that beginning at the first prior period plaintiff conceived the idea that he was not being properly treated by the members of his family, including, of course, his wife and children living with him in the same household—all of them, including plaintiff, residing in the home of the latter's mother-in-law located on a farm owned by her, but adjoining which plaintiff owned a tract of land composed of about sixty-five acres which he cultivated. During such enraged periods—which were more or less infrequent at the beginning but became much more frequent latterly—plaintiff threatened to destroy his own life and also threatened the

lives of members of his family or to inflict upon them corporal punishment, the latter of which he did on some occasions and particularly on the morning of September 18, 1937.

On that day some neighbors became informed of the disturbance and went to plaintiff's residence and they, with, perhaps, the assistance of other members of plaintiff's family, succeeded in allaying his enraged condition and by the time Dr. Clark arrived he (plaintiff) had left the house and repaired to his sorghum patch with the view of harvesting the crop, and in which he was engaged when Dr. Clark approached him. After obtaining a history of the case the doctor with plaintiff's daughter—who was about twenty-seven years of age and a school teacher—went to the field where plaintiff was at work, but they did not succeed in getting closer to him than six or eight feet, according to the testimony of those two, when plaintiff was notified by the daughter that Dr. Clark, whom plaintiff knew, desired to examine him to see if there was anything wrong with him. He not only refused to submit to the examination but ordered the doctor off the premises and assumed towards him, as well as the daughter, a very angered attitude. Nevertheless the doctor got near enough to plaintiff to observe the flashings of his eyes, and to observe other indications which convinced him of at least temporary mental disturbance. He and the daughter then returned to plaintiff's residence where the doctor remained with the view of making a closer inspection later in the afternoon. At about 4 o'clock plaintiff was observed approaching the house and the same daughter and the physician went out to meet him, but he detoured and went to his horse lot where the two attempted to approach him but he halted them and went through about the same performance that he had done earlier in the day while working in his sorghum patch. Thereupon the doctor returned to his office and made the certificate, incorporating therein the statement that he had examined the plaintiff within the last three days and that he found him in such mental condition as to require the incarceration provided for by the 1936 act, which, as we have seen, is now Section 216aa-77a of our present Statutes.

The defendant Dr. Henry was another physician located in Winchester of parallel standing to that of Dr.

Clark, and the judge of the court took the certificate made by Dr. Clark to Dr. Henry, with the view of having him to sign it also, so as to furnish the judge the two certificates required by the statute. Henry at first declined the request of the judge, but the latter explained to him that a delay until Monday morning, so as to afford an opportunity of personal examination by Dr. Henry (it then being past 6 P. M.) might be too late, and urged him (Henry) to sign the certificate on what the county judge had related to him, plus the result of Dr. Clark's efforts to ascertain plaintiff's mental condition—Henry stating that he had the utmost confidence in Dr. Clark. Finally Dr. Henry signed the certificate, but with the positive statement to the judge that he had made no examination of plaintiff and which, of course, the judge well knew. Notwithstanding such knowledge he issued the proper process for the apprehension of plaintiff, which was later served by an officer and plaintiff was placed in the asylum for the insane at Lexington, Kentucky, where he was detained from Saturday night until Monday morning.

In the meantime the judge concluded that his action in issuing the apprehension process was, perhaps, irregular, and he ordered plaintiff to be returned to him for a re-investigation more substantially in compliance with the statutory requirements. He then appointed two other physicians to make examinations of plaintiff, one of whom became convinced, as was Dr. Clark, that he was in such mental condition as came within the 1936 statute last referred to, and that he should be restrained as therein directed for the length of time provided. The other physician last appointed was also considerably so convinced, but for some reason he declined to make the necessary certificate. The judge then set aside what had previously been **done and restored** plaintiff to his liberty.

On returning **home plaintiff** declined to occupy the dwelling house with his family as he had theretofore done, but instead he equipped an adjacent cabin for his own quarters which he has occupied since that time—his wife and other members of the family looking after him and carrying him his meals, which he eats in his temporary quarters, and which act itself, together with plaintiff's testimony given in this case, would seem to confirm Dr. Clark's conclusion as to his mental condition.

On September 2, 1938, plaintiff filed this action in the Clark circuit court against Drs. Clark and Henry charging in his petition that they had illegally caused his apprehension and incarceration in the Lexington Asylum by making a false certificate of his mental condition, since neither of them as alleged had made the necessary personal examination of him as a foundation for his conclusions. The petition charged them with negligence in performing their duty when applied to by the county judge, and that the alleged false statement they made in their certificates was the proximate cause of plaintiff's apprehension and incarceration, which he averred caused him great humiliation and mental anguish and damaged him in the sum of $15,000, for which amount he prayed judgment.

Demurrers by both defendants were filed to the petition, but they do not seem to have been acted on. Various motions to strike, and for other interlocutory relief were filed, some of which were also not acted on. Finally the defendants filed separate answers, each of them denying the material averments of the petition and affirmatively setting up the facts hereinbefore related as they applied to the particular answering defendant. Demurrers filed by plaintiff to those answers were overruled, followed by replies denying some of the material averments in those defensive pleadings. An issue was finally reached and a trial had before a jury, resulting in a peremptory instruction to find for the defendant Henry, and a verdict by the jury in favor of the defendant Clark, under instructions submitted by the court. This is an appeal by plaintiff from both judgments dismissing the petition as against each defendant.

The testimony, as well as arguments of counsel, assumed a most sweeping range embodying discussions of many questions, such as the admission of testimony, and the presentation of other contentions, the greater portion of which we find to be completely immaterial, and those that might be considered as possessing remote materiality are undoubtedly non-prejudicial and for which reason we will not attempt in this opinion to follow in detail the broad field in its entirety attempted to be covered by counsel in their presentation of the case on this hearing. To do so would lengthen this opinion far beyond due or necessary limits, and without determining any material principle of law. We shall, therefore, dis-

cuss only what we conclude is pertinent to a correct determination of the case.

To begin with attention should again be called to the fact that the 1936 amendment—which is the one under which this proceeding is had—itself contains no requirement that the physicians' certificates shall expressly state that they had made the examination of the patient within the last immediately preceding three days. But if that requirement, as is contained in the 1928 act (Section 216aa-77), should be read into the 1936 amendment, then the certificates are required to state two facts—(a) that the physicians had examined the patient within the immediately preceding three days from the time of making his certificate, and (b) the results of his finding. Fact (a), of course, is but a statement as to the evidence upon which the physician bases his conclusion, required to be stated as fact (b). In this case that fact was—as is stated in the certificate—that plaintiff's mental condition called for the procedure prescribed by the amendatory statute (Section 216aa-77a) or that the physician making the certificate was of the opinion that such was true. Just how counsel for plaintiff hopes to succeed in convincing this court that Dr. Clark did not observe the statute in making his certificate we are unable to comprehend, since he did make the best examination he could in the circumstances, and which we are convinced was a substantial compliance with the statute, even if the express statement of his examination was necessary in this character of procedure. He not only went to the scene and obtained a history of the case, but he approached sufficiently near the patient to enable his professional eye to discover indications of mental derangement, and to observe the actions and conduct of plaintiff confirming that condition. Such conclusion on our part is all that we deem is necessary to be said in refutation of this most basic contention made by plaintiff's counsel relative to the Clark case.

The correct determination of the case as to Dr. Clark would have been a peremptory instruction in his favor, and our conclusion is that the court erred in not sustaining his motion for that relief. But the court overruled it and gave a peremptory instruction in favor of the defendant Henry, who, as we have seen, did not make a personal examination of plaintiff, and which fact

made the action against him approach toward a more nearly submittable one than the case against his co-defendant, Dr. Clark. However, we interpret the facts and the law as sustaining the court's action in directing a verdict in his favor for the reasons now to be discussed.

So far as we have been able to discover—and the same appears to be true with counsel for both sides—this case presents for the first time in this jurisdiction the question of a physician's liability in this character of action based on an alleged falsely made certificate, whereby the law is set in motion against the alleged mentally incompetent victim. Plaintiff's counsel cites and relies on the two cases of Bacon v. Bacon, 76 Miss. 458, 24 So. 968, and Ayers v. Russell, 50 Hun 282, 3 N. Y. S. 338, but both the statute and facts involved in those two cases are far different from our statute, and from the facts of this case. The statute in each of those jurisdictions authorized the physician to himself order the incarceration of the patient in the proper institution without any act on the part of a court having jurisdiction to take similar action. Furthermore, the facts in those cases were, that plaintiffs therein were totally free from any such charge and no sufficient reason existed for their incarceration. But were it otherwise, and those cases were actually or substantially on all fours with the instant ones, we would be disinclined to follow them by sustaining the liability of defendants contended for, in the light of the facts adduced, since such a conclusion would comport with neither logic nor justice as employed and administered in analogous character of actions, which we think should govern the determination of this case. We have said that the petition charged defendants with negligence, as well as bad faith and making false statements. We have seen that, at least so far as the defendant Clark is concerned, neither of those charges was sustained.

The analogous class of cases—the principles of which we conclude should be applied to and govern the instant case—is that of an action to recover damages for malicious prosecution. There is no element of false arrest in this case, since such an action is directed to the officer or officers who issue arresting process or those who execute it, or who otherwise make the arrest. No such action lies against the one who initiates the

prosecution and occupies the same position towards it as is occupied by defendants in the instant cases, who in a sense, and to all practical purposes, sustain the same relation to this case as does one who initiates criminal prosecution for infractions of the criminal laws. The two classes of cases are so similar in character as to warrant the application of the same principles of law to each. A defendant is not liable in a malicious prosecution action, unless his participation in the prosecution of plaintiff was without probable cause, and there is always probable cause if the defendant in the prosecution is guilty. In substantiation thereof the text in 38 C. J. 459, Section 121, says: "Proof of the actual guilt of the party accused is a complete defense to an action for malicious prosecution. * * * It matters not whether there was probable cause for the prosecution, or how malicious may have been the motives of the prosecutor; if accused is guilty, he has no legal ground of complaint." In substantiation of the first part of that text cases from nineteen foreign jurisdictions are cited, and also the domestic one of Lancaster v. McKay, 103 Ky. 616, 45 S. W. 887. Other domestic cases to the same effect are listed in Key Number System 19 and 20, under the heading of Malicious Prosecution in Volume 13 of West's Kentucky Digest, the latest one being Mosier v. McFarland, 269 Ky. 214, 106 S. W. (2d) 641; whilst the cases listed under Key Number System 20, Westerfield v. Prudential Insurance Company of America, 264 Ky. 448, 94 S. W. (2d) 986, and Haseldon v. York, 271 Ky. 567, 112 S. W. (2d) 984, hold that a defendant is exempt from liability for damages to plaintiff in a malicious prosecution action if the facts upon which he acted in his participation in the prosecution of plaintiff were such as to induce a reasonably prudent man to believe that the plaintiff was guilty as charged. See also 18 R. C. L. 57, Section 38. Thus we see that in such actions logic and good faith perform a prominent part in determining the liability of defendant, and which we think should also prevail in this character of action.

The only misstatement contained in the certificate of Dr. Henry was that he had examined plaintiff within the last three days immediately prior to his signing it; but that statement, as we have seen, was only evidentiary of his conclusion of the ultimate and necessary fact of plaintiff's actual mental condition, so as to bring him

within the purview of the statute creating the procedure against him. That evidentiary statement was, no doubt, intended—at least largely so—to convince the judge, who might act on the certificate, of the truthfulness of the facts and of the physicians' conclusions derived therefrom. But, whatever the purpose of that requirement (if applicable to this character of procedure) the ultimate fact remains that Dr. Henry stated the truth, or at least exhibited good faith in the formation of his belief concerning plaintiff's mental condition at that time. The truth concerning that condition, as incorporated in both certificates in this case, corresponds with the guilt of plaintiff in a malicious prosecution action, and when such conditions prevail they should be given the same legal effect, which is to constitute a complete defense to any action for damages growing out of plaintiff's apprehension and arrest.

Moreover, Dr. Henry in this case, as we have seen, expressly informed the county judge who issued the process for plaintiff's apprehension that he (Henry) had not examined him (plaintiff) within the time designated in the statute, and that judicial officer was fully aware of the fact when he issued the process. He prevailed upon the defendant Henry to sign the certificate made by Dr. Clark in order that the law might be set in motion at once so as to forestall possible dangerous action on the part of the plaintiff before the following Monday, or some other future period within which the actual examination might be made. The violation of law, therefore, if any, which proximately contributed to the incarceration of plaintiff, would seem to be that of the judge who issued the process for his apprehension and imprisonment with knowledge of the facts under which the certificate was made by the defendant Henry. To say the least of it, it is extremely doubtful if in such circumstances the one making the certificate could be held liable. But, however that may be, we are clearly convinced that under the testimony adduced it would be an erroneous interpretation of the law to hold that Dr. Henry should respond in damages for the brief imprisonment of plaintiff, when he at the time of the making of the certificate complained of was actually in the condition described in the statute and liable to be proceeded against as therein outlined.

In the view we have expressed with reference to the

large portions of brief taken up with the discussion of questions of evidence, criticism of the instructions, and other alleged errors committed during the progress of the trial, each and all became immaterial and unimportant.

Wherefore, for the reasons stated, the judgment is affirmed, the Whole Court sitting.