Max T. MORGAN, Appellant,

v.

Walter R. GRAHAM, Appellee.

No. 5170.

United States Court of Appeals
Tenth Circuit.

Jan. 3, 1956.

Rehearing Denied Feb. 15, 1956.

Irvine E. Ungerman, Tulsa, Okl. (Ungerman, Whitebook, Grabel & Ungerman, Tulsa, Okl., and Robert C. Saunders and William Leiter, Tulsa, Okl., on the brief), for appellant.

Floyd L. Walker, Tulsa, Okl. (Brick & Beaty, Wichita, Kan., on the brief), for appellee.

Before BRATTON and HUXMAN, Circuit Judges, and CHRISTENSON, District Judge.

HUXMAN, Circuit Judge.

This was an action by Walter R. Graham against appellant, Max T. Morgan, in the United States District Court for the Northern District of Oklahoma, to recover damages. Trial was had to the court. The trial court treated and decided the case as one for fraud and deceit. It decided the case for the plaintiff and entered a judgment against the defendant for $12,648.79.

A somewhat detailed statement of facts is essential to an understanding of the questions presented. Graham was injured in an accident in the City of Wichita, Kansas, by an automobile negligently driven by one Godfrey W. Cochran. Graham filed suit against Cochran in the Kansas state district court at Wichita and recovered a default judgment of $38,400.99. Thereafter, ascertaining that the insurance adjuster for the Moral Insurance Company[1] had made three trips to Kansas in connection with the accident, Graham sued the Company in the Oklahoma state court in Tulsa County, Oklahoma, alleging on information and belief that it had outstanding a liability insurance policy on Graham's automobile. In this action, after first setting up the defense of the failure on Cochran's part to comply with the terms of the policy, the Company filed an amended verified answer denying the existence of an indemnity policy and filed in support thereof the verified answer of its President, Max T. Morgan, stating that there was no such policy in its files. Not having the policy and faced with certain failure to prove the existence of the policy, Graham took a voluntary nonsuit. Seven months thereafter the company was adjudged insolvent and was placed in the hands of a receiver in the state courts of Oklahoma. When the policy was finally uncovered, Graham was invited to and did file a claim on it in the receivership proceeding, which claim is still pending.

Thereafter Graham brought this action against Morgan individually to recover actual and punitive damages. Judgment was entered against Morgan. The judgment consists of the following items: $5,000, the maximum amount of coverage under the policy; $1,499, property damage covered by the policy; $2,500, punitive damages; and interest on the full amount of the state judgment of $38,400.99 at 6% from the date of the entry of that judgment to September 30, 1953, the date when Graham's action in Tulsa County, Oklahoma, was dismissed.

In brief the complaint in this cause alleged the issuance of the policy to G. W. Cockran; that he and Godfrey W. Cochran were one and the same person; that the policy was in force at the time of the accident. The complaint recited the facts

1. Herein called the Company.

with respect to the state action against Cochran in which he recovered $38,400.99 and the facts with respect to the institution and dismissal of the state action against the Company in Tulsa County, Oklahoma. It set out the filing of the verified answer by the Company and the supporting affidavit by appellant, Max T. Morgan.

The complaint then alleged the Company and Max T. Morgan knew there was an outstanding policy to Godfrey W. Cochran; that in addition to filing the false and fraudulent affidavit Morgan falsely and fraudulently testified when served with a subpoena that no such policy was outstanding; that all of this was done to cheat and defraud the plaintiff. The defense to the complaint was that it failed to state a cause of action.

■■ One of the grounds on which appellant challenges the judgment is that it is an action for damages based on perjury. It is our view that this contention is not well founded. It is, of course, fundamental that in the absence of a statute to the contrary an unsuccessful litigant who has lost his case because of perjured testimony may not maintain a civil action for damages against the person who commits the perjury.[2] It is also true that the acts asserted in the complaint relied upon for recovery, if established, constitute perjury, but it does not follow therefrom that a civil action in tort for damages may not be predicated upon such testimony if all elements necessary to maintain such an action are present.[3] We think the fair analysis of the complaint, the pre-trial conference, as well as Graham's presentation of the case sustains the conclusion that this was an action to recover damages because of the false and fraudulent acts and conduct of Morgan.

■ The only question then is did Graham make out a case entitling him to a judgment because of the alleged false and fraudulent acts on the part of Morgan? It is obvious that Morgan's state-

ments in his affidavit that there was no outstanding policy in the name of *Godfrey W. Cochran* is literally true. It is equally obvious that there was a policy outstanding in the name of *G. W. Cockran,* and it is clearly established that they are one and the same person. If Morgan knew or had reason to know that G. W. Cockran and Godfrey W. Cochran were one and the same person then his affidavit was false and would support the conclusion that it was made to deceive and defraud Graham who had an action pending against the Company predicated upon the existence of such a policy.

There is evidence of acts on the part of Morgan as well as inferences from circumstances to support the conclusion that Morgan knew that G. W. Cockran and Godfrey W. Cochran were one and the same person and that the policy issued to G. W. Cockran was in fact issued to cover the car owned by Godfrey W. Cochran. Morgan was the managing officer of the Company. There was evidence tending to establish the following. Morgan knew that the Cochran car was involved in the accident and that an investigator had made a number of trips to Wichita to investigate the accident. Morgan participated in arrangements to have Cochran hurriedly leave Wichita for the purpose of avoiding service of summons on him in the Kansas case. He participated in effecting arrangements for Cochran to come to Tulsa where he stayed at a hotel. He knew that he remained in Tulsa for about ten days and then went to New Mexico. He arranged for the company to defray his expenses for his hasty departure from Kansas, in his stay in Tulsa, and his travels to New Mexico. It is difficult to conceive why he would do all these things if he honestly believed the Company had issued no policy to Cochran and that the G. W. Cockran to whom it had issued a policy was not in fact the same person.

Richard D. Gibbon, an adjuster for the Company, testified that after he investigated the loss he discussed the matter

2. 41 Am.Jur. 44; 58 Am.Jur. 506; 70 C.J.S., Perjury, § 93, p. 559.

3. See authorities in Footnote 2.

with Morgan and that he and Morgan discussed and agreed to help Cochran move to New Mexico; that Morgan approved of the paying of Cochran's expenses at Tulsa; and that Morgan knew and approved of the hiring of the lawyer to attempt to set aside the judgment against Cochran in the Kansas court.

It is contended that even if this action be considered as a tort action to recover damages for fraud it must fail because (1) appellee voluntarily dismissed his cause of action in the District Court of Tulsa County, Oklahoma, and therefore suffered no damage by the fraudulent representations, and (2) there was no reliance by Graham on the representations by Morgan.

Graham did not have the insurance policy and because of the false statements by Morgan was prevented from proving the existence of such a policy. Faced with that situation, he was forced to take a nonsuit. His dismissal of the Tulsa County action, therefore, was not voluntary. But even had he proceeded with his action and had a judgment been entered against him in the Tulsa County suit that would not prevent him from maintaining this action, when thereafter he learned of the existence of the policy and the fraud perpetrated by Morgan which prevented him from obtaining a judgment in the Tulsa County court.

■ It is, of course, true as stated by appellant that there must be reliance upon a fraudulent representation in order to sustain an action for fraud. That is just another way of saying that the aggrieved party took a course of action or refrained from taking a course of action because of the false representation. It is true that Graham testified that he did not believe Morgan's statement that no policy was issued. He was nonetheless forced to act to his detriment and do what he would not have done had the statement not been made. In other words, he was forced to rely on the misrepresentations. He was forced to act on the misrepresentations to the same extent that he would have acted had he believed them to be true.

Another contention is that there was no calculable damage to Graham because his claim before the state receiver is still pending and the dividend which will ultimately be paid thereon is undetermined. The presumption must be that at the time of the Tulsa County suit the company was solvent and could respond to a judgment for the full amount of the coverage of the policy. We know of no principle of law or equity which would give the wrongdoer the right to delay responding in damages to one he has wronged and require the injured party to go through the long process of a liquidation proceeding in order to reduce the amount the wrongdoer ultimately must pay for his wrong. There can be no doubt if Morgan pays the judgment that he will then be subrogated to Graham's right against the Company under the claim, now on file with the receiver. While this is not so stated in the trial court's judgment, we think it is inherent therein and the judgment will be so construed.

■ The award of punitive damages is challenged. The contention is that this is an equitable action and that in such an action punitive damages will not be assessed. Such is the established law of Oklahoma.[4] But this is not an equitable action. While the complaint contained allegations of fraud, deceit, concealment and perjury, the gist of the action was one at law for damages sounding in tort.

■ Complaint is made of the amount of interest awarded in the judgment. The policy contains this provision:

"II Defense, Settlement, Supplementary Payments: As respects the insurance afforded by the other terms of this policy under coverages A and B the company shall:

\* \* \* \* \* \*

"(c) pay \* \* \* all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the

---

4. Midcontinent Petroleum Corp. v. Bettis, 180 Okl. 193, 69 P.2d 346.

limit of the company's liability thereon * * *."

The trial court interpreted this provision to mean that the Company was obligated to pay interest on the entire amount of the Kansas judgment against Cochran in the sum of $38,400.99 from the date of entry of that judgment to the date Graham's Tulsa County suit was dismissed. We think in this respect the court erred. It is our view that the phrase "all interest" as used in the provision of the policy means interest only for that part of the judgment for which the Company was liable. This is the interpretation adopted by the California Supreme Court and by the Court of Appeals for the Ninth Circuit.[5]

The cause is remanded to the trial court to recompute the interest to conform to the views expressed in this opinion and to enter a corrected judgment. The costs of the appeal are divided equally between appellant and appellee.

CHRISTENSON, District Judge.

I would affirm the trial court, including the award of interest on the entire $38,400.99 judgment. The provisions of the policy seem clear that the company must pay *all* interest accruing after entry of *judgment* until the company has paid, tendered or deposited in court *such part of such judgment* as does not exceed the limit of the company's liability thereon. To construe such provision as meaning not that the company would pay all interest, but that the company would pay interest on such part of the judgment as does not exceed the limit of the company's liability, would be to draw no distinction between the two expressions which the contracting parties made separate and distinct. If the language is not, as I think it is, definite in requiring interest on the entire judgment, it then would appear so ambiguous as to require resolution against the insurer which drafted it. And there is reason and justice in favor of the interpretation contended for

here. Ordinarily the insurer controls the litigation. Under an agreement to pay all interest no harm can be caused the insured while the company bargains for settlement of the judgment or takes an appeal in its own interest; whereas unless interest is payable on the entire judgment when the policy limits are exceeded, the insured may be seriously prejudiced. He may have no way to discharge his share of the judgment to stop the running of interest against him without interfering with the company's management of the litigation and thus endangering whatever coverage he may have. On the other hand, the policy itself provides how the company can relieve itself of liability for payment of the excess interest—by paying or tendering or depositing into court the amount of the limit of its liability under the policy. Wilkerson v. Maryland Cas. Co., D.C.E.D.Va., 119 F.Supp. 383. The reasoning in the latter case seems more persuasive, and I therefore would not follow the Ninth Circuit decision cited in the prevailing opinion.

---

5. See Sampson v. Century Indemnity Co., 8 Cal.2d 476, 66 P.2d 434, 109 A.L.R. 1162; Standard Accident Insurance Co. of Detroit, Mich. v. Winget, 197 F.2d 97.