326 So.2d 113
**Paul L. SNYDER, Jr.**
**v.**
**Guy E. FAGET, M.D., et al.**
**SC 1190.**
Supreme Court of Alabama.
Jan. 9, 1976.

198

Irvin Grodsky, Mobile, for appellant.

Robert L. Byrd, Jr., and A. Neil Hudgens, Mobile, for appellee Guy E. Faget, M.D.

Barry Hess, and Thomas P. Doyle, Mobile, for appellees James W. Renkl and George M. Bellman.

SHORES, Justice.

Plaintiff Paul Snyder was committed to a state mental institution as prescribed by Title 45, § 208 et seq., Code of Alabama 1940, before that summary procedure was declared unconstitutional on its face in *Lynch v. Baxley*, 386 F.Supp. 378 (M.D. N.D.Ala.1974).

He filed suit against Dr. Guy E. Faget, James W. Renkl, George M. Bellman, and Mildred Z. Snyder, claiming in one count that Dr. Faget, negligently or with reckless indifference to the consequences, willfully or wantonly gave testimony to the Probate Court of Mobile County that the plaintiff was insane, when in fact plaintiff was not insane.

In a second count, he claims damages based upon an alleged conspiracy to deprive him of his liberty and to defraud him of his property by falsely and fraudulently having him committed to a state mental institution.

All defendants, except Mildred Z. Snyder, filed motions to dismiss, which the court granted. Judgment was entered pursuant to Rule 54(b), ARCP, and the plaintiff appealed.

The plaintiff admits that for him to prevail in his assertion that count one (charging the physician with negligence or wanton misconduct) is good, he must distinguish *O'Barr v. Feist*, 292 Ala. 440, 296 So.2d 152 (1974). He fails in that regard. He contends that the letter written by the physician sued in *O'Barr* left the decision to commit or not to commit to the probate judge. He says that the affidavit signed by Dr. Faget in this case removes any discretion from the probate judge. We disagree. Dr. Faget's affidavit is as follows:

"I, Dr. Guy E. Faget of the County of Mobile and State of Alabama, being duly sworn according to law, do certify and declare that I have examined into the state of health and mental condition of Paul Lincoln Snyder of the said County of Mobile and that my opinion is that he is insane."

Without going into all of the different expressions of opinion in *O'Barr, supra*, it appears that there was a concensus that:

"... the statutes for commitment place the decision making power entirely within the sound discretion of the probate judge. ... The physician is no more than a witness in the proceeding and he has no authoritative means to foretell that the probate judge will act in accordance with his report and commit the appellant. The judge is free of any obligation to follow the physician's conclusions. ..." (292 Ala. at 449, 296 So.2d at 160)

*O'Barr* also held that commitment proceedings were judicial in nature, and, as such, afforded the physician with absolute immunity as to the negligence count, as well as to the counts sounding in libel and false imprisonment.

█ We see no distinction between the letter written by Dr. Feist, set out in *O'Barr*, and the statement signed by Dr. Faget in the instant case. In both instances, they amount to no more than a

medical opinion of the patient's mental condition. Each was made in the course of a judicial proceeding; and as the opinion offered was relevant to those proceedings, they are clothed with privilege and, therefore, cannot serve as a basis for an action for damages based upon negligence.

█ Some states have held that certifying physicians who act as witnesses in commitment proceedings are civilly liable for negligently certifying that the plaintiff is insane. Others, and Alabama has joined their ranks in *O'Barr*, take the position that the physician is immune from liability on the ground that the statement is one made in the process of a judicial proceeding. *Mezullo v. Maletz*, 331 Mass. 233, 118 N.E.2d 356 (1954); *Christopher v. Henry*, 284 Ky. 127, 143 S.W.2d 1069 (1940); *Fisher v. Payne*, 93 Fla. 1085, 113 So. 378 (1927); *Hurley v. Towne*, 155 Me. 433, 156 A.2d 377 (1959); *Dabkowski v. Davis*, 364 Mich. 429, 111 N.W.2d 68 (1961); *Dyer v. Dyer*, 178 Tenn. 234, 156 S.W.2d 445 (1941).

*Niven v. Boland*, 177 Mass. 11, 58 N.E. 282 (1900), was cited in *O'Barr, supra*. The Supreme Court of Massachusetts cited *Niven v. Boland, supra*, in *Mezullo v. Maletz, supra*, for the proposition that:

"... 'It is more important that the administration of the law in the manner provided should not be obstructed by the fears of physicians that they may render themselves liable to suit than it is that the person certified by them to be insane ... should have a right of action in case it turns out that the certificate ought not to have been given.' ..." 331 Mass. at 237, 118 N.E.2d at 359)

We appreciate that the rule of privilege discussed in *O'Barr* was confined to the libel and false imprisonment counts. However, it would be anomalous indeed if one were entitled to the rule of absolute immunity for statements intentionally made, knowing them to be false, and yet be liable

for negligently making the same statements.

We hold, therefore, that the trial court correctly granted the physician's motion to dismiss the negligence count.

We turn now to a consideration of the conspiracy count. The defendants argue that the rule of immunity should extend to this count as well.

▮ The allegation of the complaint is that the ". . . Defendants . . . conspired to deprive the Plaintiff of his liberty and to defraud him of his property by falsely and fraudulently having the Plaintiff committed to a state mental institution without cause."[1] Despite some commentary which has questioned the existence of the tort of conspiracy in this state, see, e. g., Williamson, Torts—Conspiracy—The Resulting Confusion from the Varied Development of Civil Conspiracy, 23 Ga.Bar J. 548 (1960–61), there is no question that Alabama recognizes civil conspiracy as a substantive tort. In *Gaines v. Malone*, 244 Ala. 490, 492, 13 So.2d 870, 872 (1943), it was observed that there are ". . . many sorts of conspiracies which give rise to a civil action . . ."

▮ Conspiracy has been defined as ". . . the combination of two or more persons to do (a) something that is unlawful, oppressive, or immoral; or (b) something that is not unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means; or (c) something that is unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means. [Citations Omitted]" *Barber v. Stephenson*, 260 Ala. 151, 155, 69 So.2d 251, 254 (1953). It is also established that the gist

of the action in civil conspiracy is the wrong committed rather than the conspiracy itself. *O'Dell v. State*, Footnote 1.

▮ Some have argued that civil conspiracy is a valueless addition to tort law. We do not agree. One should have some means of redress when it is shown that persons have combined and conspired to injure him in his person or property, and have done acts which have produced that effect, unless the defendants show some legal justification. See Holmes, J., dissenting in *Vegelahn v. Guntner*, 167 Mass. 92, 44 N.E. 1077 (1896).

In the instant case, defendants seem to concede this general principle but claim that the gravamen of the complaint in this case is that the defendants conspired to give false testimony in a judicial proceeding, which is not actionable.

▮ It is true that, as a general rule, one may not recover damages growing out of perjured testimony offered in a judicial proceeding. At 15A C.J.S. Conspiracy § 16, the following appears:

". . . Since, as a general rule, in the absence of statute, no action lies to recover damages caused by perjury, false swearing, subornation of perjury, or an attempt to suborn . . . an action for damages for conspiracy to commit perjury and for the giving of false testimony or for subornation or attempted subornation of perjury, cannot ordinarily be maintained. It has been held, however, that where the giving of false testimony is but a part of a plan or scheme to defraud a person, an action for the conspiracy will lie. . . .

". . . .

1. Even before the adoption of the Alabama Rules of Civil Procedure, pleading requirements for stating a cause of action involving conspiracy were not stringent:

"A great quantum of detail need not be required to be alleged as to the formation of the conspiracy because of the clandestine nature of the scheme or undertaking engaged

in. The existence of the conspiracy must often be inferentially and circumstantially derived from the character of the acts done, the relation of the parties, and other facts and circumstances suggestive of concerted action. [Citations Omitted]" *O'Dell v. State*, 270 Ala. 236, 240, 117 So.2d 164, 168 (1959).

". . . Where parties, in pursuance of a conspiracy or combination for that purpose, fraudulently make use of legal proceedings to injure another, an action lies against them, at the suit of the person injured, to recover damages sustained, and the fact that a combination for fraud has been brought to a successful end by false testimony produced on the trial does not make an action for conspiracy obnoxious to the rule that there can be no civil action for perjury or subornation of perjury. . . ."

The leading case on this particular point appears to be *Morgan v. Graham*, 228 F.2d 625, 54 A.L.R.2d 1290 (10 Cir. 1956). In that case, the president of an insurance company denied, under oath in a judicial proceeding, that there was a liability policy covering the insured. A creditor of the insured brought suit against the president of the insurance company claiming damages in that the creditor had been injured as a result of the statements of the defendant made as a part of a scheme to defraud and deceive the creditor. There, the court said:

"One of the grounds on which appellant challenges the judgment is that it is an action for damages based on perjury. It is our view that this contention is not well founded. It is, of course, fundamental that in the absence of a statute to the contrary an unsuccessful litigant who has lost his case because of perjured testimony may not maintain a civil action for damages against the person who commits the perjury. It is also true that the acts asserted in the complaint relied upon for recovery, if established, constitute perjury, but it does not follow therefrom that a civil action in tort for damages may not be predicated upon such testimony if all elements necessary to maintain such an action are present. . . ." (228 F.2d at 627, 54 A.L.R.2d at 1295)

*Frist v. Gallant*, 240 F.Supp. 827 (W.D. S.C.1965), involved a suit by a wife against her husband and his father charging that they conspired to give, and did give, false and fraudulent testimony in a prior suit for separate maintenance brought by her against her husband, with a purposeful and preconceived intent to defraud the plaintiff of the just amount of alimony to which she was entitled. That court said:

". . . Under the circumstances here it would appear that the public policy considerations, which form the basis for denying causes of action based upon perjured testimony, are overshadowed by the public interest behind the right to civil redress of this plaintiff, who allegedly has been wronged by the successful execution of a conspiracy, even though the success of such alleged scheme was based primarily upon the use of false testimony." (240 F.Supp. at 829)

Likewise, in *Robinson v. Missouri Pacific Transp. Co.*, 85 F.Supp. 235 (W.D.Ark. 1949), a conspiracy was alleged to wrongfully deprive the plaintiff of the right to earn a living. There, the court said that, as a general rule, no cause of action exists for subornation of perjury and stated the reason for the rule:

". . . For reasons of public policy such a cause of action has generally been denied in order to protect the proper functioning of the courts by enabling witnesses to make full and complete disclosures in their testimony without the restraint or fear of subsequent suits for damages, and therefore, an action for damages for conspiracy to commit perjury cannot ordinarily be maintained.

"However, the complaints in the instant cases may be held to state a cause of action without running afoul of the generally accepted prohibition against civil actions for perjury or conspiracy to commit perjury or to suborn perjury. The conspiracy alleged was to deprive wrongfully the plaintiffs of their rights to earn a living for themselves and their families according to their desires as to

choice and availability of employment. Any fraudulent invasion of that right that causes damage is a tort and the damaged person has a cause of action. According to the allegations of the complaints this conspiracy was carried out by a series of overt acts, and the procuring and the giving of perjured testimony at the hearing prior to final discharge was an incident to the alleged fraud of defendant against the plaintiffs. Thus it is at least possible that the allegations may be deemed sufficient to charge an actionable invasion of a right of the plaintiffs through the violation of a duty of the defendants owing to the plaintiffs, the violation occurring by reason of the overt acts of defendants to bring about the wrongful discharge of the plaintiffs in the furtherance of the conspiracy to that effect. . . ." (85 F.Supp. at 238)

Also, in *Oldham v. McRoberts*, 37 Misc.' 2d 979, 237 N.Y.S.2d 26, 31 (1962), a New York Court recognized the existence of a civil action for fraud and deceit based on conspiracy ". . . where the fraud is brought to a successful end by false testimony . . ." That court held that a conspiracy had been alleged with the perjury only a step to accomplish it.

We are mindful of the policy reasons for the general rule, which denies a right of action based upon testimony offered in a judicial proceeding, and are in agreement with that policy. However, the rule of immunity cannot be absolute.

Suppose, for example, that two or more persons deliberately and consciously agreed with each other to fraudulently deprive a named beneficiary of the proceeds of a testator's estate. To succeed in this effort, it is necessary to invalidate the will of the testator. Once admitted to probate, the only way a will may be invalidated is through a judicial proceeding. If the contestants are successful in their efforts to defeat the will by falsely testifying that the testator lacked testamentary capacity,

for example, they should not be permitted to claim judicial privilege. Their perjury was but a step in the scheme to deprive the beneficiary of the proceeds of the estate. The fact that the only vehicle for carrying out the scheme was through a judicial proceeding should not prevent the beneficiary from recovering from them the resulting damage, assuming he can prove all of the elements necessary to an action of conspiracy.

In the instant case, the allegations are that the defendants conspired to deprive the plaintiff of his liberty and property by falsely and fraudulently having him committed to a mental institution. We do not think the general policy reason behind the rule extending immunity to suits, based upon testimony offered in a judicial proceeding, is defeated by allowing the plaintiff an opportunity to attempt to prove what he has alleged—a conspiracy by the defendants to fraudulently deprive him of his liberty and property.

It is not unlawful to express an opinion as to one's sanity or insanity under proper circumstances. It is likewise not unlawful to commit one to a mental institution where proper procedures are followed. But, it is improper to fraudulently conspire to deprive a person of his liberty or property; and such conduct is civilly actionable where the plaintiff suffers damages as a result thereof.

Obviously, the plaintiff has the burden of proof, and must establish every element of the tort alleged. In Jolowicz & Lewis, Winfield on Torts, Conspiracy 557, 559, 560 (8th ed. 1967), the necessary elements are summarized as follows:

"(a) Purpose. The most important feature of a tortious conspiracy where unlawful means are not used is that the object or purpose of the combination must be to cause damage to the plaintiff. It is not a matter of 'intention' as that word is normally used in the law, for in-

tention signifies not what a person is aiming at but what may reasonably be expected to flow from what he does, while for conspiracy the test is 'what is in truth the object in the minds of the combiners when they acted as they did.' Malice in the sense of malevolence, spite or ill-will is not an essential for liability; what is required is that the combiners should have acted *in order that* (not *so that*) the plaintiff should suffer damage. If they did not act in order that the plaintiff should suffer damage they are not liable, however selfish their attitude and however inevitable the plaintiff's damage may have been.
"...

"(b) Combination. There must, of course, be concerted action between two or more persons ...

"(c) Overt act causing damage. ... an overt act causing damage is an essential of liability in tort. ..."

This case is here on the pleadings. The defendants have been granted their motion to dismiss. The only question before us is whether the complaint states a claim upon which relief can be granted. It does. Obviously, the plaintiff will have a considerable burden, perhaps an insurmountable one, in proving the elements of the tort alleged. He cannot recover on proof that he was, through negligence or ill will, committed to a mental institution. He must prove all of the elements set out above.

■ Regardless of how unlikely it appears that the plaintiff will be successful in his efforts to make out a case on proof, under our procedure he is entitled to the attempt, where his complaint states some legal theory which will support a claim for relief. We believe that the conspiracy claim in this case meets that test.

The judgment appealed from is, therefore, reversed and the cause is hereby remanded.

Reversed and remanded.

HEFLIN, C. J., and FAULKNER, JONES and EMBRY, JJ., concur.

MERRILL, BLOODWORTH and MADDOX, JJ., dissent.

BLOODWORTH, Justice (dissenting).

I must dissent since I concurred in that portion of Justice McCall's opinion for this Court in *O'Barr v. Feist*, 292 Ala. 440, 296 So.2d 152 (1974) in which he wrote that one who testifies in a judicial proceeding enjoys absolute privilege. I continue to adhere to that view—which is the general rule in this country. See authorities at 292 Ala. 446, 296 So.2d 157.

It is my judgment that the policy of the law should continue to be that no one who testifies in a judicial proceeding shall be subject to civil suit for damages on account of testimony he gave under any theory of law. To hold otherwise, as the majority does in allowing suit for conspiracy, permits the doing indirectly of that which could not be done directly and thus subverts the policy of the law—which is that all should be privileged to testify without the threat of civil action on account thereof.

MERRILL and MADDOX, JJ., concur.